**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――――

08-4706

―――――――

OMAR THOMAS,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

―――――――

On Petition for Review from the
Board of Immigration Appeals
BIA No. A041-362-379
Immigration Judge: The Honorable Andrew Arthur

―――――――

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 16, 2010

Before: SLOVITER, BARRY, and SMITH,
*Circuit Judges*

(Filed:  October 26, 2010)

1

Sandra L. Greene
Greene Fitzgerald Advocates and Consultants
2001 East Market Street
2nd Floor
York, PA 17402
        *Counsel for Petitioner*

Patrick J. Glen
Thomas W. Hussey
Glen T. Jaeger
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*

---

OPINION

---

Smith, *Circuit Judge*.

The Board of Immigration Appeals (BIA) dismissed Omar Thomas's appeal from a decision of the Immigration Judge (IJ) finding him removable. The BIA concluded that Thomas's misdemeanor convictions under New York Penal Law § 221.40 constituted aggravated felonies. Thomas then filed a

petition for review with this court. Simultaneously, Thomas sought reconsideration by the BIA of its dismissal of his appeal. The BIA granted the motion for reconsideration, but adhered to the legal analysis set forth in its initial decision. Thomas did not petition for review of the BIA's second decision. We have before us only the BIA's initial decision, and must determine whether we have jurisdiction to review it. We conclude that we do, and will grant the petition.

I.

Thomas, a native and citizen of Jamaica, entered the United States in November of 1987 at the age of 13 as a lawful permanent resident. A little more than nine years later, on December 9, 1996, Thomas was arrested. On December 10, Detective Piazza of the New York City Police Department completed a written statement, the issuance of which, if false, is punishable under New York Penal Law § 210.45. It alleged that Thomas committed the criminal sale of marijuana in the fourth degree in violation of New York Penal Law § 221.40, as well as criminal possession of marijuana in the fifth degree in violation of New York Penal Law § 221.10(1). The detective averred that he had been "informed by Undercover [informant] that . . . [Thomas] did hand to informant two plastic bags of a green, leafy substance with a distinct odor in exchange for $20[.]" Thomas, who was represented by counsel from the Legal Aid Society, appeared in the Criminal Court of the State of New York that same day in what was designated No. 96x072866. His

3

counsel advised the Court that Thomas was "pleading guilty to 221.40 in full satisfaction" and that Thomas waived his right to prosecution by information. The Court sentenced Thomas to three days of community service.

Thomas was arrested again on December 27, 1997 for, *inter alia*, the criminal sale of marijuana in the fourth degree in violation of New York Penal Law § 221.40, No. 97x074755. A police officer prepared a written statement for that case, also punishable if false under New York Penal Law § 210.45, alleging that the undercover officer received from Thomas and another man one bag containing a dried, green, leafy substance in exchange for $5. According to the certificate of disposition, Thomas pleaded guilty on January 2, 1998 to violating § 221.40.[1]

In addition, Thomas was convicted of several other controlled substance offenses. On July 31, 2007, he was served with a Notice to Appear. The Notice charged Thomas with having been convicted of the "Criminal Sale of Marijuana" in violation of § 221.40 on January 8, 1997,[2] and as a result

---

[1] The record before us does not contain the transcript of the plea colloquy for the proceeding in No. 97x074755.

[2] Subsequently, it was determined during the immigration proceeding that this allegation was erroneous because the January 8, 1997 conviction was for possession of marijuana. As a consequence, the IJ focused on the December 10, 1996 and the January 2, 1998

4

thereof, being removable as a criminal alien on two grounds: (1) for having been convicted of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii); and (2) for having been convicted of a controlled substance offense, 8 U.S.C. § 1227(a)(2)(B)(i). A form entitled Additional Charges of Inadmissibility/Deportability specifically cited the January 2, 1998 conviction, No. 97x074755, as well as four other convictions involving marijuana. A625.

Before the IJ, Thomas conceded he was removable on the second ground alleged in the Notice to Appear, *i.e.*, that his convictions were controlled substance offenses. He challenged the averment that he had been convicted of an aggravated felony, and filed an application for cancellation of removal under 8 U.S.C. § 1229b(b). Because cancellation of removal requires the alien to establish, *inter alia*, that he has not been convicted of an aggravated felony, *id.* § 1229b(b)(1)(C), the IJ directed Thomas to submit additional documentation regarding his criminal history. Thereafter, the IJ determined that Thomas had failed to demonstrate that his two convictions for violating New York Penal Law § 221.40 were not aggravated felonies and therefore concluded that he was ineligible for cancellation of removal.

Thomas appealed to the BIA, challenging the IJ's determination that he was ineligible for cancellation of removal

---

misdemeanor convictions under New York Penal Law § 221.40.

5

because he failed to establish that his misdemeanor convictions under New York Penal Law § 221.40 were not aggravated felonies. In a decision dated November 5, 2008, the BIA misread the IJ's adjudication as a determination that he was removable on both of the grounds set forth in the Notice to Appear, *i.e.*, that his convictions qualified as both controlled substance offenses and aggravated felonies. Furthermore, the BIA stated that the IJ had pretermitted his application for cancellation of removal. In its consideration of the merits of Thomas's appeal, the BIA appropriately recognized that there were two routes to apply in determining whether a conviction is an aggravated felony, *i.e.*, the illicit trafficking route, and the hypothetical federal felony route. *See Gerbier v. Holmes*, 280 F.3d 297 (3d Cir. 2002). The BIA found support in the written statements of the police officers for the determination that Thomas had sold the marijuana for remuneration and that such conduct constituted a hypothetical federal felony under the Controlled Substances Act. As a result, the BIA agreed with the IJ that Thomas's conviction records established that he had been convicted of an aggravated felony.

This timely petition for review followed. Simultaneously, Thomas filed a motion with the BIA seeking reconsideration, which asserted, *inter alia*, that the BIA's procedural recitation was factually incorrect because the IJ had found him removable only on the second ground, to wit, that his convictions qualified as controlled substance offenses. During the pendency of his petition for review filed with this court, the

6

BIA granted his motion for reconsideration in a decision dated June 12, 2009. The BIA agreed with Thomas that its initial decision mischaracterized the ground on which the IJ had determined he was removable. For that reason, the BIA granted the motion to reconsider in order to clarify that Thomas was found removable solely on the basis that his convictions were controlled substance offenses. The BIA further stated that

> [a]part from the aforementioned factual error, which we have now corrected, we conclude that our decision of November 5, 2008, properly evaluated the legal question presented on appeal, namely whether [Thomas's] 1996 and 1998 convictions for fourth degree criminal sale of marijuana in violation of N.Y. Penal Law § 221.40 preclude him from qualifying for cancellation of removal. For the reasons stated in our prior decision, we continue to hold that [Thomas] is ineligible for cancellation of removal . . . Specifically, the record reflects that [Thomas] was convicted of making *remunerative* sales of marijuana, offenses that correspond to felonies punishable under the Federal Controlled Substances Act . . . , namely marijuana distribution.

Accordingly, the BIA dismissed Thomas's appeal and affirmed the order of removal. Within days of the second BIA decision, the government filed a motion to dismiss the pending petition

for review for lack of jurisdiction. Despite that action by the government, Thomas failed to file a petition for review of the BIA's second decision.

II.

The Immigration and Nationality Act (INA), as amended, provides for "[j]udicial review of a final order of removal[.]" 8 U.S.C. § 1252(a)(1). The government contends that the BIA's June 2009 decision granting the motion for reconsideration effectively vacated the earlier November 2008 decision. The result is, according to the government, that the BIA's November 2008 decision no longer constitutes a final order of removal subject to judicial review. If the government is correct, because Thomas did not file a petition for review of the BIA's June 2009 decision, we lack jurisdiction under § 1252(a).

In *Stone v. Immigration & Naturalization Service*, 514 U.S. 386 (1995), the Supreme Court considered a similar argument by an alien that his motion for reconsideration rendered the BIA's underlying order nonfinal. Based on the statutory provisions providing for judicial review in § 106(a)(6) of the INA, which has been repealed and replaced by § 1252(b)(6),[3] the Court reasoned that

_____

[3] Section 106(a)(6) of the INA was repealed in 1996 and replaced by § 1252(b)(6). The two statutory provisions are almost

8

[b]y its terms, § 106(a)(6) contemplates two petitions for review and directs the courts to consolidate the matters. The words of the statute do not permit us to say that the filing of a petition for reconsideration or reopening dislodges the earlier proceeding reviewing the underlying order. The statute, in fact, directs that the motion to reopen or reconsider is to be consolidated with the review of the order, not the other way around. This indicates to us that the action to review the underlying order remains active and pending before the court. . . .

Were a motion for reconsideration to render the underlying order nonfinal, there would be, in the normal course, only one petition for review filed and hence nothing for the judiciary to consolidate.

---

identical. The similarity between § 1252(b)(6)'s text and its predecessor § 106(a)(6) is demonstrated by the following comparison of the two statutory provisions in which the current § 1252(b)(6) is annotated with strike-outs of some of the text of § 106(a)(6) and underlining of the new text: "[W]henever~~henever~~hen a petitioner seeks review of an order under this section, any review sought ~~with respect to~~of a motion to reopen or reconsider ~~such an~~the order shall be consolidated with the review of the order." Thus, the Supreme Court's interpretation of § 106(a)(6) in *Stone* guides our application of § 1252 in this case.

514 U.S. at 394. In other words, *Stone* instructs that the initial order of the BIA is "final when issued, irrespective of the later filing of a reconsideration motion[.]" *Id.* at 395.

*Stone* is controlling. Accordingly, we conclude that the BIA's initial decision in November of 2008 constitutes a final order "irrespective of the later filing" of Thomas's motion for reconsideration. Because Thomas filed a timely petition for review of the November 2008 decision, we have authority under § 1252(a)(1) to review that ruling.

The finality of an order, however, is not the only requirement that must exist before we may exercise jurisdiction. *See Jaggernauth v. Attorney Gen.*, 432 F.3d 1346, 1351 (11th Cir. 2005) (declaring that *Stone* "makes clear that the finality of the [BIA's first order] was not disturbed by [the] filing" of the motion for reconsideration, but noting that *Stone* did not resolve the justiciability issue that arises when reconsideration is granted and the Board affirms its original order). "To sustain our jurisdiction in the present case, it is not enough that a dispute was very much alive" when the petition for review was filed in the court of appeals. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). This case-or-controversy requirement "limits the business of federal courts to 'questions presented in an adversary context and in a form historically viewed as

10

capable of resolution through the judicial process[.]'" *Id.* at 396 (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). When the questions or "issues presented are no longer 'live,'" the case is moot. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). That is, an issue is moot if "changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Artway v. Attorney Gen. N.J.*, 81 F.3d 1235, 1246 (3d Cir. 1996) (internal quotation marks omitted).

Here, there has been a change in the circumstances that existed at the time Thomas filed his petition for review, *i.e.*, the BIA subsequently granted his motion for reconsideration. The BIA's mere grant of a motion for reconsideration, however, does not in itself render the petition for review moot. Rather, it is the substance of the BIA's subsequent decision, upon reconsideration, that determines whether there is still a live issue for the court of appeals to resolve. For example, if the BIA's subsequent decision substantively altered the *ratio decidendi* in its earlier disposition and operated to vacate the BIA's earlier decision, then the petition for review of the earlier decision is without effect because there is no longer any order or decision for the court of appeals to review. On the other hand, if the BIA's subsequent decision did not materially alter the rationale of the earlier ruling, that ruling remains effective and subject to judicial review by the court of appeals.

Our sister courts of appeals have employed this sort of substantive analysis in determining whether there is still a live

11

controversy to be resolved. For example, in *Jaggernauth*, the Eleventh Circuit concluded that the BIA's order granting reconsideration did not vacate the BIA's original decision. 432 F.3d at 1350-52. The Eleventh Circuit acknowledged that the second decision contained some additional commentary by the BIA about the propriety of its original ruling. The Court concluded, however, that this commentary did not alter the effectiveness of the original order inasmuch as the BIA "explicitly" upheld its original order and noted that it had "'acted properly.'" *Id.* at 1351. Furthermore, the additional commentary was not incorporated into the original order, and it did not change the substance of the original order. *Id.* The Court determined, therefore, that it had jurisdiction over the petition for review of the BIA's original order. *Id.* at 1352.

Similarly, in *Plasencia-Ayala v. Mukasey*, 516 F.3d 738 (9th Cir. 2008), the Ninth Circuit considered whether it had jurisdiction over a petition for review of a decision of the BIA in light of the BIA's subsequent order granting the alien's motion for reconsideration. The Court agreed with the Eleventh Circuit's approach in *Jaggernauth*, declaring that

> [w]here the BIA's decision granting a motion for reconsideration expressly affirms the BIA's prior decision and its analysis does not significantly differ, there is little reason to require "the petitioner to raise the identical issue again in a petition to review the BIA's decision on the

12

motion to reconsider." *Desta[ v. Ashcroft]*, 329 F.3d [1179,] 1184 [(9th Cir. 2003)]. *Stone* recognizes that Congress created parallel processes of administrative and judicial review of the BIA's decisions to expedite the removal process. Once a petition for review has been filed, federal court jurisdiction is divested only where the BIA subsequently vacates or materially changes the decision under review.

*Id.* at 745, overruled on other grounds by *Marmolejo-Campos v. Holder*, 558 F.3d 903, 911 (9th Cir. 2004) (en banc).

In contrast to *Jaggernauth* and *Plasencia-Ayala*, the Sixth Circuit decided in *Mu Ju Li v. Mukasey*, 515 F.3d 575 (6th Cir. 2008), that the BIA's grant of an alien's motion for reconsideration effectively vacated the BIA's original decision. In *Mu Ju Li*, the alien sought reconsideration, contending that the BIA had neglected to address her primary argument, which sought relief under a specific statutory provision. The BIA acknowledged that it had failed to address this argument, granted reconsideration, and explained why the statutory provision on which the alien relied was inapplicable. The alien did not seek review of the BIA's second decision granting reconsideration. The government argued that the alien's petition for review of the first decision was no longer reviewable because the subsequent decision effectively vacated the BIA's earlier decision. The Court agreed. It explained that "when the BIA grants a motion to reconsider and–after considering the

13

issues afresh–renders a new decision addressing the arguments raised, the original order has been vacated and a new order entered in its place." *Id.* at 578. Based on this reasoning, the Sixth Circuit concluded that it lacked jurisdiction over the alien's petition for review of the BIA's initial decision. *Id.* at 578-79.

The question for this Court, then, is whether the BIA's June 2009 decision vacated or materially altered its November 2008 decision. After scrutinizing the BIA's June 2009 decision, we conclude that the circumstances here are more analogous to those in *Jaggernauth* and *Plasencia-Ayala*. First, it is significant that the June 2009 decision did not explicitly state that it was modifying, reversing or vacating the November 2008 decision. Rather, the BIA explained that it was granting reconsideration because its "prior decision contains a factual error and therefore we will reconsider the decision in order to correct our error and clarify the record." In other words, the purpose of granting reconsideration was limited to correcting the factual error. Indeed, in the very next sentence, the BIA stated that it "once again conclude[d] that [Thomas] [wa]s removable and ineligible for cancellation of removal." After the BIA corrected its factual mischaracterization of the IJ's order, the BIA stated that its November 2008 decision "properly evaluated the legal question presented on appeal[.]" The BIA then declared: "For the reasons stated in our prior decision, we continue to hold that [Thomas] is ineligible for cancellation of removal[.]" In short, it adhered to its earlier legal analysis. We

14

conclude, therefore, that the June 2009 decision did not vacate or substantially modify the November 2008 decision. As a consequence, the petition for review of the November 2008 decision continues to present a live controversy for our judicial review.

III.

Thomas contends that the BIA erred in its determination that his 1996 and his 1998 convictions qualified as aggravated felonies, a determination that rendered him ineligible for cancellation of removal. Whether Thomas's convictions qualify as aggravated felonies is a question of law subject to plenary review. *Evanson v. Attorney Gen.*, 550 F.3d 284, 288 (3d Cir. 2008); *Garcia v. Attorney Gen.*, 462 F.3d 287, 290-91 (3d Cir. 2006).

An alien may obtain relief from removal if he qualifies for cancellation of removal under 8 U.S.C. § 1229b. In order to be eligible for a discretionary grant of cancellation of removal, an alien must satisfy four requirements. *Id.* § 1229b(b). One of these requirements is that the alien has not been convicted of an offense under 8 U.S.C. § 1227(a)(2). That provision renders a criminal alien deportable if he committed certain crimes, including an "aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). "[A]ggravated felony" is defined to include, *inter alia*, "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in

15

section 924(c) of Title 18)[.]"  8 U.S.C. § 1101(a)(43)(B).  The term "drug trafficking crime" in § 924(c)(2) "means any felony punishable under" three specified federal statutes, one of which is the Controlled Substances Act.  18 U.S.C. § 924(c)(2). Furthermore, the definition of aggravated felony specifies that the "term applies" regardless of whether the offense violates "Federal or State law."  8 U.S.C. § 1101(a)(43).

In *Gerbier*, we adopted the approach advanced by the BIA for determining when a state drug offense constitutes an aggravated felony.  280 F.3d at 304.  That approach recognized two routes: the illicit trafficking route and the hypothetical federal felony route.  *Id.* at 305-06.  Under the illicit trafficking route, a state drug conviction will not qualify as an aggravated felony unless "(1) the offense [is] a felony under the law of the convicting sovereign; and (2) the offense . . . contain[s] a 'trafficking element'–*i.e.*, it must involve 'the unlawful trading or dealing of a controlled substance.'"  *Id.* at 305 (citation omitted).  Because Thomas's convictions were misdemeanors under New York Penal Law, *see* N.Y. Penal Law § 221.40, those convictions cannot, by definition, be aggravated felonies pursuant to the illicit trafficking route.

"The second route by which a state drug conviction could be an aggravated felony under the INA is the hypothetical federal felony route[.]"  *Id.* at 306 (internal quotation marks omitted).  Under this route, a state conviction, regardless of whether it is classified as a misdemeanor, qualifies as an

16

aggravated felony if it is "'punishable' under one of the three specified statutes if federally prosecuted" and "would be punishable by a term of imprisonment of over one year." *Id.* (quoting *Steele v. Blackman*, 236 F.3d 130, 135-36 (3d Cir. 2001) (internal quotation marks omitted). In other words, if the "state drug conviction is punishable as a felony under the Controlled Substances Act[,]" it may constitute an aggravated felony pursuant to the hypothetical federal felony route. *Gerbier*, 280 F.3d at 315; *Lopez v. Gonzales*, 549 U.S. 47, 55 (2006) (declaring that "[u]nless a state offense is punishable as a federal felony it does not count"). In *Evanson*, we noted that under the hypothetical federal felony route a "state marijuana conviction is . . . only equivalent to a federal drug felony if the offense involved payment or more than a small amount of marijuana." 550 F.3d at 289.

Our analysis of the hypothetical federal felony route requires application of the formal categorical approach. *Id.* at 290. This approach was described in *Taylor v. United States*, 495 U.S. 575 (1990). In that case, the Supreme Court considered whether the defendant's state conviction for burglary constituted a "burglary" for purposes of 18 U.S.C. § 924(e), thereby justifying the application of a sentencing enhancement. The Court concluded that the term "burglary" in § 924(e) did not depend on the specific definition set forth by a state. Rather, the term for purposes of § 924(e) meant the generic crime of burglary that "regardless of its exact definition or label, ha[s] the basic element of unlawful or unprivileged entry into, or

17

remaining in, a building or structure, with intent to commit a crime." *Id.* at 599.  In order to determine if a defendant's prior offense warrants the sentencing enhancement under § 924(e), the Court noted that the sentencing court will apply "a formal categorical approach, looking only to the statutory definitions of the prior offense, and not to the particular facts underlying those convictions." *Id.* at 600; *see Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007) (applying the categorical approach to an immigration proceeding and noting that under the formal categorical approach a court "should normally look not to the facts of the particular prior case, but rather to the state statute defining the crime of conviction").

*Taylor* recognized that in some states a burglary offense was broader than the § 924(e) generic definition of burglary.  In that event, the Court instructed, the sentencing court is permitted "to go beyond the mere fact of conviction . . . where a jury was actually required to find all the elements of generic burglary." *Id.* at 602.  This modified approach permits a sentencing court to find that a state offense constitutes a generic burglary under § 924(e) if "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.*

In this case, application of the formal categorical approach requires examination of the New York statute under which Thomas was convicted, without consideration of the particular facts underlying the conviction, to determine whether

18

it is punishable as a felony under § 841(a)(1) of the Controlled Substances Act for knowingly distributing or possessing with the intent to distribute a controlled substance. *Garcia*, 462 F.3d at 291. Section 221.40 of the New York Penal Law provides, with an exception not relevant here, that "[a] person is guilty of criminal sale of marihuana in the fourth degree when he knowingly and unlawfully sells marihuana[.]" The term "sell" is defined by statute as meaning "to sell, exchange, give or dispose of to another[.]" N.Y. Penal Law § 220.00(1). This definition gives rise to four alternative grounds for establishing criminal culpability under the statute. Only selling and exchanging marijuana, however, qualify as the hypothetical federal felony of distributing marijuana in violation of 21 U.S.C. § 841(a). *Evanson*, 550 F.3d at 289 (declaring that "[a] state marijuana conviction is therefore only equivalent to a federal drug felony if the offense involved payment or more than a small amount of marijuana") (citing *Steele*, 236 F.3d at 137). Merely giving or disposing of marijuana does not constitute a hypothetical federal felony. *Steele*, 236 F.3d at 131 (observing that "one may be convicted of 'criminal sale" [under § 221.40] without evidence of a sale as commonly understood"). Therefore, because § 220.00(1) is in the disjunctive and because some criminal sales under § 221.40 might not constitute an aggravated felony, *Steele*, 236 F.3d at 131, we must depart from the formal categorical approach and apply the modified categorical approach. *Garcia*, 462 F.3d at 291-92; *see also Evanson*, 550 F.3d at 290.

19

Although *Taylor* articulated the modified categorical approach in a case involving a conviction by jury, the Supreme Court determined in *Shepard v. United States*, 544 U.S. 13 (2005), that sentencing courts could apply the modified categorical approach to convictions obtained pursuant to guilty pleas. *Id.* at 19. It explained that *Taylor* did not limit the evidence that may be considered under this modified approach "strictly to charges and [jury] instructions . . . since a conviction might follow trial to a judge alone or a plea of guilty." *Id.* at 20. The Court refused, however, to allow a sentencing court to consider under the modified categorical approach a police report submitted with the application for the issuance of criminal complaint. It held that under the modified categorical approach the inquiry

> to determine whether a plea of guilty . . . necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant or to some comparable judicial record of this information.

*Id.* at 26.

Thomas's convictions under § 221.40 are dated, to say the least. The records adduced by Thomas in an effort to establish that he had not been convicted of an aggravated felony

20

are sparse. With respect to the December 10, 1996 conviction, No. 96x072866, there is the police officer's written statement, a plea colloquy, what appears to be a docket page, and a certificate of disposition. For the January 2, 1998 conviction, No. 97x074755, the record before us contains only the police officer's written statement and a certificate of disposition. There are no documents relating to the guilty plea proceeding in the 1998 conviction.

The BIA determined that it could consider the police officers's written statements, which it characterized as affidavits of probable cause, because they were charging documents. It explained that in "New York, a criminal action commences with the filing of an accusatory instrument" and the officer's statements were "the accusatory instrument[s] prepared by the arresting officer[s] in connection with the filing of [the] criminal complaint[s]." Because the statements indicated that Thomas exchanged marijuana for money, the BIA concluded that the statements established that Thomas's convictions involved remunerative sales that would be punishable under 21 U.S.C. § 841 of the Controlled Substance Act which makes it a crime to, *inter alia*, distribute marijuana.[4]

---

[4] The government contends that the BIA's consideration of the police officers's written statements is consistent with the Supreme Court's decision in *Nijhawan v. Holder*, __ U.S. __, 129 S. Ct. 2294, 2303 (2009), which held that consideration of sentencing related material is permitted under the modified categorical approach in

We accept that the police officer's written statements played a role in the initiation of this particular criminal action. Nonetheless, we are unwilling to accept the BIA's characterization of the statements as the relevant accusatory instruments under New York Crim. Proc. Law § 100.10, as we are unable to find, and we have not been directed to, any authority establishing that a police officer's lone written statement, punishable if false under § 210.45, constitutes an "information" or a "misdemeanor complaint."[5] Furthermore, even if the statements alone qualified as informations or misdemeanor complaints, without some judicial indication of whether the statement was processed as an information or a misdemeanor complaint, we would be unable to determine if such written statements were the relevant charging documents

determining whether an alien's conviction constituted an aggravated felony. In a footnote, the government acknowledged that its argument might not be persuasive as *Nijhawan* could be distinguished on the basis that it concerned the approach to be employed for a "circumstance-specific" offense, as opposed to a "generic" crime such as an "illicit trafficking" offense. This very distinction was pointed out by the Supreme Court in *Carachuri-Rosendo v. Holder*, __ U.S. __, 130 S. Ct. 2577, 2586 n.11 (2010). For that reason, we conclude *Nijhawan* provides no support for the government's argument that the BIA appropriately considered the police officers's written statements.

[5] We limit our discussion to whether the written statements constitute an information or a misdemeanor complaint under New York Penal Law § 100.10 because the other accusatory instruments are not applicable here.

22

under New York law. Our inability would stem from the fact that a misdemeanor complaint "must . . . be replaced by an information" unless the defendant "waive[s] prosecution by information and consent[s] to be prosecuted upon the misdemeanor complaint." N.Y. Crim. Proc. Law §§ 170.65 (1), (3). As a result, without documentation as to the type of accusatory instrument that was filed, we could not ascertain if the defendant had to waive his right to prosecution by information. In the absence of such documentation, it would be unclear whether the written statements constituted the relevant charging documents under New York law. *See Evanson*, 550 F.3d at 293 n.7 (noting that, because the criminal complaint, which appended an affidavit of probable cause, was superceded by the criminal information, it was not the relevant charging document).

We are cognizant that the plea colloquy for the December 10, 1996 conviction, No. 96x072866, established that Thomas waived his right to prosecution by an information. Therefore, the government might successfully argue on remand that the police officer's written statement, assuming that it could be regarded as an accusatory instrument, constituted the relevant charging document and provided evidence from the record of conviction establishing that Thomas engaged in a remunerative sale of marijuana. This argument falls short in our view because it fails to recognize that a court is permitted under the modified categorical approach to consult the charging documents, together with other judicial records, "to determine what

23

elements formed the basis for a defendant's underlying conviction." *Evanson*, 550 F.3d at 291 (citing *Taylor*, 495 U.S. at 602). *Taylor* instructed that the purpose of going "beyond the mere fact of conviction" was to determine whether there was a finding of each element necessary to convict the defendant. 495 U.S. at 602. *Shepard* confirmed this focus. It explained that, under the modified categorical approach, a court may not look to a police officer's report appended to the application for the issuance of a criminal complaint because the purpose of consulting records is to determine whether during a plea a defendant "necessarily admitted elements" of the offense. 544 U.S. at 26. In *Carachuri-Rosendo v. Holder*, the Supreme Court focused on whether the record of the defendant's second state misdemeanor conviction contained any "finding of the fact of his prior drug offense[,]" which would render the second state misdemeanor conviction a recidivist simple possession offense punishable under the Controlled Substances Act, hence an aggravated felony. 130 S. Ct. 2577, 2586 (2010). Because there was no "finding of recidivism" in the record of the second state misdemeanor conviction, *id.*, the Court rejected the government's position which relied on what the alien "could have been convicted of . . . but was not." *Id.* at 2587.

In *Steele*, 236 F.3d at 136-37, we considered the very issue addressed in *Carachuri-Rosendo*. There, we were presented with the question whether any of the alien's misdemeanor convictions for § 221.40 constituted an aggravated felony because it was punishable under the Controlled

24

Substances Act as a recidivist simple possession. 236 F.3d at 137 (citing 21 U.S.C. § 844). We heeded *Taylor*'s instruction that the modified categorical approach must focus on whether the record for the offense of conviction evinces the necessary factual findings or admissions for the statute of conviction. We declared that

> [o]ne cannot suffer the disabilities associated with having been convicted of an aggravated felony unless one has been convicted of a felony. This, of course, means that there must be a judicial determination beyond a reasonable doubt of every element of a felony or a constitutionally valid plea that encompasses each of those elements.

*Id.* at 136-37. We were troubled by the grave consequences that could attach to the misdemeanor charges if they qualified as an aggravated felony, noting that such charges

> are frequently not addressed by a defendant with the same care and caution as a felony indictment with its more serious, immediate consequences. This concern counsels, at a minimum, that we insist on sufficient formality in the misdemeanor proceeding to assure that each and every element of the . . . federal felony is focused on and specifically addressed in that proceeding.

*Id.* at 137. Because the recidivist element necessary for a

25

federal felony had never been litigated and there was no judicial determination regarding that element, we concluded that Steele had not been convicted of an aggravated felony.

In *United States v. Johnson*, 587 F.3d 203 (3d Cir. 2009), we questioned whether the records of the state conviction were sufficient under the modified categorical approach to establish the elements necessary to constitute a crime of violence. There, the plea agreement was "not particularly helpful" and the colloquy was "not available." *Id.* at 206 (internal quotation marks omitted). As a result, the government urged the sentencing court in applying the modified categorical approach to infer from the criminal information, which was the charging document, that the defendant's simple assault conviction constituted a violent crime for purposes of U.S.S.G. § 4B1.2(a)(2). 587 F.3d at 206. We recognized that the criminal information could properly be considered under *Shepard*. But we did not believe that we could "conclusively determine, based on the information alone, whether [the defendant] actually admitted" the necessary facts to establish a knowing or intentional assault. *Id.* at 212. As a result, we declined to engage in such a "speculative exercise." *Id.* at 213. We remanded the case for further proceedings because the government had located a transcript of the plea colloquy.

That we hesitated to speculate in *Johnson* suggests that we should exercise caution here as well. Thomas pleaded guilty, but the documentation supporting his two guilty pleas is sparse.

26

It is undisputed that Thomas pleaded guilty to violating § 221.40, which makes it a criminal offense to sell marijuana. As we noted above, in light of the definition of "sell," there are four alternative grounds upon which criminal culpability under the statute may be established, *i.e.*, selling, exchanging, giving or disposing of marijuana. After scrutinizing the record, however, we cannot definitively establish that Thomas actually admitted during the guilty plea proceedings that he sold or exchanged marijuana, which are the only two grounds for concluding that a § 221.40 conviction constitutes the hypothetical federal felony of distributing marijuana in violation of § 841(a).

Ordinarily, the factual basis for the plea appears in the record of conviction, and a court applying the modified categorical approach should be able to discern which of the alternative elements a defendant "necessarily admitted" during a guilty plea colloquy. *Shepard*, 544 U.S. at 26. The factual basis for Thomas's plea could have been placed on the record by incorporating the written statement of the police officer or by specific inquiry of Thomas during the colloquy. In this case, there is no documentation relative to the plea proceeding for the January 2, 1998 conviction, No. 97x074755. The transcript of the plea colloquy for the December 10, 1996 conviction, No. 96x072866, reveals that Thomas admitted nothing during that plea colloquy. Indeed, he never uttered a word. His counsel informed the Court that Thomas was "pleading guilty to § 221.40 in full satisfaction." In the absence of a specific

27

reference to the police officer's written statement, we cannot construe counsel's entry of a guilty plea on behalf of his client as an admission to the facts set forth in the statement. Nor is there any inquiry by the presiding judge during the guilty plea as to Thomas's specific conduct. The Court never even inquired whether Thomas agreed with his counsel's representation that he was pleading guilty.

Because the records of these § 221.40 convictions are silent regarding the factual basis for the guilty pleas, we cannot conclusively determine that Thomas actually admitted that he *sold* or *exchanged* marijuana. It is equally plausible that Thomas's admission of guilt under § 221.40 was to conduct which would *not* constitute a hypothetical federal felony, *i.e.* giving or disposing of the marijuana. The police officers's written statements are, therefore, of no assistance to us in determining whether Thomas's convictions qualify as aggravated felonies.

The government contends that the written statements by the police officers, which it presumes constituted the charging documents, are sufficient under *Garcia*, 462 F.3d 287. There, the alien had been convicted under a Pennsylvania statute that proscribed three offenses: manufacturing, delivering, and possessing with the intent to deliver or manufacture a controlled substance, 35 Pa. Stat. Ann. § 780-113(a)(30). We noted that it was unclear whether the manufacturing prong involved the trading and dealing element required to demonstrate that the

28

conviction qualified as an aggravated felony under the illicit trafficking route. Because the statute criminalized some conduct which would not constitute an aggravated felony, we departed from the formal categorical approach and considered the charging document, which alleged that the alien had sold marijuana to an undercover officer. 462 F.3d at 289, 292. Although the alien entered an open plea to violating § 780-113(a)(30), we concluded that the charging document made it "clear . . . that Garcia pled guilty to delivery and possession with the intent to deliver[,]" as opposed to the manufacturing offense. *Id.* at 293.

The government's reliance on *Garcia* is misplaced. The criminal information in *Garcia* set forth a factual basis for Garcia's plea that could not have supported a prosecution for violation of the manufacturing prong of the statute of conviction. As a result, the averments in the criminal information ruled out the possibility that during the open plea Garcia admitted that he engaged in conduct violative of the manufacturing provision. By eliminating the manufacturing prong as the factual basis for the plea, the criminal information eliminated the sole ground for finding that Garcia's open plea was to conduct that did not constitute an aggravated felony. As a consequence, the criminal information made it "clear" that Garcia pled guilty to the elements of delivery and possession with intent to deliver under the statute.

Unlike *Garcia*, the averments in the written statements of

29

the police officers that Thomas received money in exchange for marijuana provided a factual basis for Thomas to plead guilty to each of the alternative elements under § 221.40, *i.e.*, "sell[ing], exchang[ing], giv[ing] or dispos[ing] of" the marijuana to another person.   N.Y. Penal Law §§ 220.00, 221.40. Accordingly, the written statements, if they were the charging documents, did not narrow the factual basis for the plea to the type of offense that necessarily entailed a remunerative sale.  In other words, the written statements do not make it clear that Thomas actually pleaded guilty to selling or to exchanging the marijuana. Without evidence that Thomas actually admitted that he engaged in a remunerative sale, his open plea to § 221.40 did not establish that he was convicted of a drug trafficking crime that qualified as an aggravated felony.

For the reasons set forth above, we conclude that the records for the December 10, 1996 conviction and the January 2, 1998 conviction do not establish that Thomas admitted or assented to engaging in a remunerative sale of marijuana.  In the absence of judicial records to establish such a finding, we conclude that Thomas's misdemeanor convictions under § 221.40 were not drug trafficking crimes under 8 U.S.C. § 1101(a)(43)(B).

IV.

In sum, we conclude that we have jurisdiction over Thomas's petition for review of the BIA's original decision.

30

Because Thomas's misdemeanor convictions for violating New York Penal Law § 221.40 do not constitute drug trafficking crimes that qualify as aggravated felonies, we will grant Thomas's petition for review and remand for further proceedings.