PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4478
_____


DAMIAN ANDREW SYBLIS,
Petitioner


v.


ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____


On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A087-154-613)
Immigration Judge:  Honorable Walter A. Durling
_____


Argued February 18, 2014

Before: FISHER, JORDAN and SCIRICA, *Circuit Judges*.


(Filed: August 18, 2014 )

Ryan A. Muennich, Esq. **(Argued)**
Muennich & Bussard
30 Vesey Street
16th Floor
New York, NY 10007

Counsel for Appellant

Nancy Morawetz, Esq.
Washington Square Legal Services, Inc.
Immigrant Rights Clinic
245 Sullivan Street
5th Floor
New York, NY 10012


Jayashri Srikantiah, Esq.
Stanford Law School
Mills Legal Clinic, Immigrants' Rights Clinic
559 Nathan Abbott Way
Stanford, CA 94305

Counsel for Amicus

Anthony P. Nicastro, Esq. **(Argued)**
United States Department of Justice
Office of Immigration Litigation

450 5th Street, N.W.
Washington, DC 20001

Thomas W. Hussey, Esq.

Eric H. Holder, Jr., Esq.

Sharon M. Clay, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Counsel for Respondent

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

This appeal arises from the entry of an order of removal under 8 U.S.C. § 1227(a)(1)(B).[1] An Immigration

---

[1] 8 U.S.C. § 1227(a)(1)(B) renders deportable "[a]ny alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title."

Judge ("IJ") found petitioner removable and ineligible for cancellation of removal, and the Board of Immigration Appeals ("BIA") affirmed. Petitioner concedes removability under § 1227(a)(1)(B), but contests the adverse determination of his eligibility for cancellation of removal. Because petitioner has failed to meet his statutorily prescribed burden of demonstrating eligibility for relief from removal, we will affirm.

## I. Facts & Procedural Background

Petitioner Damian A. Syblis, a native and citizen of Jamaica, entered the United States on May 9, 2000 as a non-immigrant visitor. Pursuant to his visa status, Syblis was authorized to remain in the United States for a temporary period not to exceed three months. Despite this limitation, he remained in the United States beyond three months without seeking additional authorization.

Syblis's contact with the law began on July 31, 2004, when he was charged with possession of marijuana, in violation of Va. Code Ann. § 18.2-250.1. The charges were later amended, for unknown reasons, to possession of drug paraphernalia, in violation of Va. Code Ann. § 54.1-3466. He was convicted on November 30, 2004 of the amended charge. On March 27, 2008, in a matter unrelated to the 2004 incident, Syblis was convicted of possession of marijuana, in violation of Va. Code Ann. § 18.2-250.1.

Thereafter, on July 19, 2010, the United States Department of Homeland Security initiated removal proceedings against Syblis, charging him with removability pursuant to 8 U.S.C. § 1227(a)(1)(B) for overstaying his visa

4

authorization, and pursuant to 8 U.S.C. § 1227(a)(2)(B)(i)[2] for his paraphernalia and marijuana convictions. Appearing before an IJ on April 14, 2011, Syblis conceded removability on the grounds that he had overstayed his visa; however, he contested his removability on the grounds that he was convicted of an offense relating to a controlled substance. During that time, Syblis also renewed a previous application for an adjustment of status, pursuant to 8 C.F.R. § 245.2(a)(5)(ii), and requested a waiver of criminal inadmissibility grounds, pursuant to 8 U.S.C. § 1182(h).[3]

On June 16, 2011, the IJ considered Syblis's controlled substances arguments to determine his eligibility under 8 U.S.C. § 1182(h). The IJ concluded that both of Syblis's convictions − for possession of drug paraphernalia and possession of marijuana − related to "controlled substances"

---

[2] Section 1227(a)(2)(B)(i) of Title 8 of the United States Code renders deportable "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation . . . relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana . . . .").

[3] Under 8 U.S.C. § 1182(h), the "Attorney General may, in his discretion, waive [a finding of inadmissibility] as it relates to a single offense of simple possession of 30 grams or less of marijuana . . . ."

5

for purposes of 8 U.S.C. § 1182(a)(2)(A)(i)(II).[4] Because Syblis had two convictions that related to controlled substances, instead of only one, the IJ found him ineligible for a waiver of criminal inadmissibility under 8 U.S.C. § 1182(h). The IJ pretermitted Syblis's application for an adjustment of status, and ordered him removed from the United States to Jamaica.

Syblis appealed the IJ's determination of ineligibility to the BIA. Because Syblis conceded removability under 8 U.S.C. § 1227(a)(1)(b), the BIA declined to reach the merits on his challenge to the IJ's decision to sustain the removal charge concerning 8 U.S.C. § 1227(a)(2)(B)(i). In analyzing the IJ's denial of Syblis's request for relief, the BIA first observed that Syblis had the burden of demonstrating his eligibility for relief under the waiver statute. It then acknowledged that Va. Code Ann. § 54.1-3466 punished paraphernalia offenses potentially related to controlled substances included within the Controlled Substances Act (the "CSA"), such as methamphetamine, cocaine, heroin, and opium-substances, and those not included within the CSA, such as those recognized by the official United States Pharmacopoeia National Formulary. The BIA based its ultimate conclusion on the fact that Syblis had not "meaningfully demonstrated" that his conviction fell into the latter category. (App. at 5). Because Syblis's convictions – both the paraphernalia offense and the marijuana offense –

_____

[4] 8 U.S.C. § 1182(a)(2)(A)(i)(II) renders inadmissible "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a violation of (or a conspiracy or attempt to violate) any law or regulation . . . relating to a controlled substance (as defined in section 802 of Title 21)."

6

appeared to relate to controlled substances, and Syblis had not made any specific proffer otherwise, the BIA affirmed the IJ's conclusion that he was statutorily ineligible for a waiver of inadmissibility under 8 U.S.C. § 1182(h).

This timely petition for review followed.

## II. Jurisdiction & Standard of Review

The BIA had jurisdiction to review the IJ's order of removal under 8 C.F.R. § 1003.1(b)(3). This Court's jurisdiction arises under 8 U.S.C. § 1252(a).[5]

"When the BIA issues its own decision on the merits, rather than a summary affirmance, we review its decision, not that of the IJ." *Pieschacon-Villegas v. Att'y Gen.*, 671 F.3d 303, 310 (3d Cir. 2011). "We review legal determinations de novo, subject to the principals of deference articulated in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984)." *Id.*

## III. Analysis

"An alien applying for relief or protection from removal has the burden of proof to establish that the alien [] satisfies the applicable eligibility requirements." 8 U.S.C. § 1229a(c)(4)(A)(i); *see Jean-Louis v. Att'y Gen.*, 582 F.3d

---

[5] While jurisdiction to review removal orders issued against noncitizens convicted of certain crimes is generally precluded by 8 U.S.C. § 1252(a)(2)(C), this jurisdiction stripping only applies where the noncitizen is found to be removable on the basis of the criminal conviction. The jurisdiction-stripping provision does not apply in the instant context, however, because the BIA affirmed the IJ's decision only as to Syblis's removability based upon the overstay statute.

462, 464 n.2 (3d Cir. 2009) ("An alien bears the burden of establishing his eligibility for discretionary cancellation of removal."). "If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." 8 C.F.R. § 1240.8(d).

As previously noted, § 1182(a)(2)(A)(i)(II) renders inadmissible "any alien convicted of . . . a violation of . . . any law or regulation . . . relating to a controlled substance (as defined in section 802 of Title 21)." 8 U.S.C. § 1182(a)(2)(A)(i)(II). And § 1182(h) provides for a waiver of that finding of inadmissibility, where the alien has been convicted of only "*a single offense* of simple possession of 30 grams or less of marijuana." 8 U.S.C. § 1182(h) (emphasis added). Here, Syblis has two convictions that potentially relate to controlled substances under § 1182(a)(2)(A)(i)(II) – his conviction for possession of drug paraphernalia under Va. Code Ann. § 54.1-3466 and his conviction for possession of marijuana under Va. Code Ann. § 18.2-250.1. He has chosen to argue that Va. Code Ann. § 54.1-3466 does not relate to controlled substances under § 1182(a)(2)(A)(i)(II). If Syblis is correct, he may be eligible for a waiver of inadmissibility under § 1182(h) because he will have only been convicted of one law relating to a controlled substance.[6]

We are thus faced with the question of whether Syblis has adequately met his burden of demonstrating his eligibility for relief. To meet this burden, Syblis must affirmatively demonstrate either: (1) that Va. Code Ann. § 54.1-3466 is not

---

[6] Syblis would still need to demonstrate that his November 30, 2004 conviction for possession of marijuana involved 30 grams or less of marijuana.

8

a law relating to a controlled substance; or (2) that the controlled substance involved in his conviction was not defined by federal law. *See Rojas v. Attorney General*, 728 F.3d 203, 209 (3d Cir. 2013) (en banc) (analyzing a substantively identical statute to determine the government's burden in a removal proceeding).[7]

In his petition for review, Syblis argues that he has met this burden.[8] He argues that Va. Code Ann. § 54.1-3466 cannot relate to controlled substances because the range of behavior targeted by the statute covers *controlled drugs* and

---

[7] In *Rojas*, we analyzed a statute substantively identical to the one at issue in this case. There, the government instituted removal proceedings against Rojas, a noncitizen, under 8 U.S.C. § 1227(a)(2)(B)(i), which rendered deportable "any alien who at any time after admission has been convicted of a violation of . . . any law or regulation . . . relating to a controlled substance (as defined in section 802 of Title 21) . . .." *Rojas*, 728 F.3d at 205. Given the language of the statute, we determined that, in order for the government to meet its burden, it had to establish that Rojas: (1) "is an alien (2) who at any time after entering the country violated or attempted to violate a law relating to a controlled substance and (3) that the controlled substance is defined as such by federal law." *Id.* at 209. We apply here the same construction to the substantively identical language found in 8 U.S.C. § 1182(a)(2)(A)(i)(II).

[8] Syblis initially based his entire argument on the assumption that resolution of this case required resort to either the formal categorical approach or the modified categorical approach. However, at oral argument, he conceded that, in light of our recent decision in *Rojas*, those arguments are no longer valid.

9

not *controlled substances*. Syblis finds this to be a key distinction, as the statute defines the terms "drug" and "controlled substances" separately. Because, as he sees it, Va. Code Ann. § 54.1-3466 does not relate to controlled substances, Syblis contends that our inquiry is at an end, and our Court need not reach the question of whether the controlled substance involved in his conviction was defined by federal law. Alternatively, however, he argues that, if we conclude that Va. Code Ann. § 54.1-3466 does meet the "relating to" portion of the analysis, he has still met his burden because his record of conviction is silent as to the type of substance involved in his offense.

## A.

We begin with a discussion of whether Va. Code Ann. § 54.1-3466 relates to "controlled substances" for purposes of 8 U.S.C. § 1182(a)(2)(A)(i)(II). In *Rojas*, we acknowledged "a parallel but distinct line of cases . . . developed to address situations in which the relevant federal conduct is presented not as a generic, unitary crime but as a conviction 'relating to' other crimes or objects." 728 F.3d at 217. Analysis of those cases does not require a strict element-by-element match between the federal and state statutes as required by the categorical approach.[9] *See id.* at 217 n.15 (noting that many cases deciding whether a statute "relates to" controlled substances involve statutes of conviction that have no exact federal analog, making impossible the comparison of elements that the categorical approach requires). Rather, "the

---

[9] The categorical approach is typically "used to ascertain whether a prior conviction 'fits' the definition of a generic federal predicate offense for purposes of certain immigration or sentencing consequences." *Rojas*, 728 F.3d at 214.

10

inquiry focuses on the nature of the defendant's conviction, and whether it 'stand[s] in relation,' 'pertain[s],' has 'bearing of concern,' or 'refer[s]' to the object or crime of comparison." *Id.* at 217 (quoting *Desai v. Mukasey*, 520 F.3d 762, 764 (7th Cir. 2008)). This inquiry hones in on the expansive scope generally accorded the "relating to" language. *See*, *e.g.*, *Mizrahi v. Gonzales*, 492 F.3d 156, 159 (2d Cir. 2007) ("Congress's use of the phrase 'relating to' in federal legislation generally signals its expansive intent."); *Denis v. Atty. Gen.*, 633 F.3d 201, 212 (3d Cir. 2011) (applying the phrase "relating to" broadly); *Luu-Le v. INS*, 224 F.3d 911, 915 (9th Cir. 2000) (observing that the Ninth Circuit has previously construed the "relating to" language broadly).

In order to determine whether Va. Code Ann. § 54.1-3466 relates to controlled substances for purposes of § 1182(a)(2)(A)(i)(II), we must, therefore, "survey the interrelationship between" Va. Code Ann. § 54.1-3466 and federally-defined controlled substances, "and apply the phrase relating to broadly, seeking a logical or causal connection." *Denis*, 633 F.3d at 212 (alteration in original) (internal quotation marks and citations omitted). We find that this test is easily met here.

The statute specifically states:

> . . . *[I]t shall be a misdemeanor for any person to possess or distribute controlled paraphernalia* which shall mean a hypodermic syringe, needle or other instrument or implementation or combination thereof *adapted for the administration of* **controlled**

11

> *dangerous substances by hypodermic injections* . . . . under circumstances which reasonably indicate an intention to use such controlled paraphernalia for purposes of illegally administering any controlled drug, or gelatin capsules, glassine envelopes or any other container suitable for the packaging of individual quantities of controlled drugs in sufficient quantity to and under circumstances which reasonably indicate an intention to use any such item for the illegal manufacture, distribution, or dispensing of any such controlled drug.

Va. Code Ann. tit. 54.1 - 3466 (emphasis added). The statute defines "controlled substance" as any "drug, substance, or immediate precursor in Schedules I through VI . . . .," listing, for example, methamphetamine, cocaine, heroin, peyote, and opium-substances. *See* Va. Code Ann. tit. 54.1 – 3401, §§ 3446-55. The substances listed in Schedules I through VI are covered, at least in part, by the CSA.

Syblis argues, however, that the "underlying element" of Va. Code Ann. § 54.1-3466 refers to only the use of controlled drugs and not controlled substances. (Petitioner's Opening Br. at 9). It is on this distinction that Syblis bases his argument that Va. Code Ann. § 54.1-3466 does not relate

12

to controlled substances.  He directs our attention to the fact that the term "drug" is defined separately in the statute as:

> (i) articles or substances recognized in the official United States Pharmacopoeia National Formulary or official Homeopathic Pharmacopoeia of the United States, or any supplement to any of them; (ii) articles or substances intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or animals; (iii) articles or substances, other than food, intended to affect the structure or any function of the body of man or animals; (iv) articles or substances intended for use as a component of any article specified in clause (i), (ii), or (iii); or (v) a biological product.

Va. Code Ann. tit. 54.1 – 3401.  He argues that this definition of the term "drug" mirrors the language of a statute we examined in *Borrome v. Attorney General*, 687 F.3d 150, 163 (3d Cir. 2012), where we concluded that certain provisions of the statute did not relate to controlled substances.  Syblis argues that we should reach the same conclusion here.  We disagree.  This case concerns neither the same situation nor the same statute as in *Borrome*.  There, we examined the Food, Drug, and Cosmetic Act (the "FDCA") to determine

13

whether it was a law relating to controlled substances. A significant point of distinction here is that the FDCA is not a drug paraphernalia statute. On that point alone we are justified in disregarding that case for purposes of our analysis.

We decline to dismiss *Borrome* so quickly, however, as that case brings to the forefront major flaws in Syblis's argument. Despite Syblis's contentions, the fact that the remaining portion of Va. Code Ann. § 54.1-3466 refers to "drugs" bears little on our analysis as to whether the statute "'stand[s] in relation,' 'pertain[s],' has 'bearing of concern,' or 'refer[s]' to" controlled substances. *Rojas*, 728 F.3d at 217 (quoting *Desai*, 520 F.3d at 764). We made this point in *Borrome*:

> [A] law need not require for its violation the actual involvement of a controlled substance in order to relate to a controlled substance. If Congress wanted a one-to-one correspondence between the [laws of conviction] and the federal CSA, it would have used a word like "involving" instead of "relating to" . . . . In this vein, the BIA and several of our sister Courts of Appeals have held that a law prohibiting the possession or use of drug paraphernalia is a law relating to a controlled substance.

687 F.3d at 160 (alterations and internal quotation marks omitted). Syblis's construction of Va. Code Ann. § 54.1-3466 cuts too narrowly for purposes of the "relating to" analysis

14

and, rather than construe the language of the statute broadly, invites us to revert back to the element-by-element analysis that we rejected in *Rojas*. 728 F.3d at 215 (stating that the formal categorical approach would not apply to a "relating to" inquiry). We decline that invitation.

The basis for our conclusion in *Borrome* further demonstrates the error in Syblis's arguments. We concluded "that the FDCA prohibits 'countless activities that are completely unconnected to controlled substances'" and that "the connection between the substances listed in the CSA and those at issue in the FDCA was 'not at all evident from the face of [the statute].'" *Rojas*, 728 F.3d at 218 (quoting *Borrome*, 687 F.3d at 162). That is clearly not the case here. Va. Code Ann. § 54.1-3466 is plainly intended to criminalize behavior involving the possession or distribution of various substances – at least some of which are covered by the federal schedules of controlled substances. This point is demonstrated by the statute's use of the term "controlled substances" and its coinciding definition. Further, the statute makes clear that an object is not "controlled paraphernalia" unless it is in some way linked to substances. Indeed, the statute painstakingly describes the circumstances and intent that must be present in order for a conviction to be obtained under the statute, all of which relate to the production or use of substances that, again, are covered in part by the federal schedules of controlled substances. On this basis, we are satisfied that Va. Code Ann. § 54.1-3466 is sufficiently connected to controlled substances so as to be "related to" controlled substances for purposes of § 1182(a)(2)(A)(i)(II). *See Luu-Le*, 224 F.3d at 915 ("Although the definition of 'drug' . . . does not map perfectly the definition of 'controlled

15

substance' . . . in our opinion [the statute] is clearly a law 'relating to' a controlled substance.'").[10]

**B.**

Because Va. Code Ann. § 54.1-3466 relates to controlled substances for purposes of § 1182(a)(2)(A)(i)(II), Syblis must prove that the substance involved in his conviction was not defined by federal law in order to be eligible for relief. *Rojas*, 728 F.3d at 209. Syblis faces an additional hurdle at the outset, however, because his record of conviction is inconclusive as to the specific substance involved. Our inquiry thus compels us to determine whether an inconclusive record of conviction is sufficient to satisfy a noncitizen's burden to demonstrate eligibility for relief from removal. For our Court, this question is a matter of first impression.

---

[10] Syblis also contends that if we were to read the "controlled drugs" requirement in the Virginia statute as "controlled substances," we would render meaningless other words in the statutory language. We reject this contention. We are not reading "controlled drugs" *as* "controlled substances." As our analysis indicates, the statute refers to both "drugs" *and* "controlled substances." Further, the portion of the statute to which Syblis directs our attention, Va. Code Ann. tit. 18.2-265.3, which he claims is the actual statute under which individuals are charged for paraphernalia related to controlled substances, is unhelpful to his position as well. That statute, which punishes "person[s] who sell[] or possess[] with intent to sell drug paraphernalia," criminalizes a completely different act – the sale of, or intent to sell, drug paraphernalia.

Five other Courts of Appeals have addressed this issue. The Fourth, Seventh, Ninth, and Tenth Circuits have held that an inconclusive record is insufficient to satisfy a noncitizen's burden of proving eligibility for discretionary relief. *See Sanchez v. Holder*, -- F.3d --, 2014 WL 3329186, at *6 n.6 (7th Cir. July 9, 2014) (noting that if, in the relief context, "the analysis has run its course and the answer is still unclear, the alien loses by default"); *Young v. Holder*, 697 F.3d 976, 990 (9th Cir. 2012) (en banc) (relying on the "statutorily prescribed burden of proof" to conclude that a noncitizen cannot carry his burden of demonstrating eligibility for discretionary relief by merely establishing that record of conviction is inconclusive), *overruling Sandoval-Lua v. Gonzales*, 499 F.3d 1121 (9th Cir. 2007) (concluding that an inconclusive record of conviction satisfies a noncitizen's burden of establishing eligibility for discretionary relief); *accord Salem v. Holder*, 647 F.3d 111, 116 (4th Cir. 2011); *Garcia v. Holder*, 584 F.3d 1288, 1290 (10th Cir. 2009). Each case relies heavily on the statutorily prescribed burden-shifting scheme associated with removal proceedings.

The Fourth Circuit, for example, explained that it is the alien's burden to prove by a preponderance of the evidence that the inadmissibility ground "*do*[*es*] *not* apply." *Salem*, 647 F.3d at 115 (emphasis added). With an inconclusive record of conviction, "[i]t is equally likely that [the noncitizen] was convicted of [the federal crime] as it is that he was not." *Id.* at 117. The Tenth Circuit added that, "[t]he fact that [the noncitizen] is not to blame for the ambiguity surrounding his criminal conviction does not relieve him of his obligation to prove eligibility for discretionary relief." *Garcia*, 584 F.3d at 1290. On that basis, those courts have concluded that the noncitizen cannot meet his or her burden where the record is inconclusive.

17

The only court to conclude otherwise is the Second Circuit, which employed the categorical approach to hold that presentation of an inconclusive record of conviction satisfies a noncitizen's burden to demonstrate that he has not been convicted of an aggravated felony. *See Martinez v. Mukasey*, 551 F.3d 113, 121-22 (2d Cir. 2008). The court placed significant emphasis on the statute's use of the word "conviction," and focused on the practical difficulties presented by failure to confine the relief inquiry in accordance with strictures of the categorical approach. *Id.* at 122. We have already determined above that the categorical approach does not apply to the case before us today. It is, therefore, unnecessary for us to reconcile that approach with the language of the statute at issue here. A more noteworthy distinction between the Second Circuit's decision and that of the Fourth, Ninth, Seventh, and Tenth Circuits, however, is the Second Circuit's lack of emphasis on the noncitizen's burden in the relief context. [11] *See, e.g., Salem*, 647 F.3d at

---

[11] Following oral argument, the Immigrant Defense Project (the "IDP") requested leave to file as amicus curiae a letter in support of petitioner. We granted that motion. In that letter, the IDP asserts that the question of whether a noncitizen is ineligible for relief based upon a prior conviction is a legal inquiry – rather than factual – as to which the burden of proof has no relevance. We disagree with IDPs contention regarding the burden of proof. Courts cannot arrive at legal conclusions in a context such as this without considering the underlying facts. Our analysis of a noncitizen's burden in this context merely assists us in arriving at a legal conclusion, that is, the determination of whether an inconclusive record of conviction is sufficient to satisfy a noncitizens' burden of proving eligibility for

18

119 (criticizing *Martinez* for dismissing the "clear statutory language" establishing the noncitizen's burden in the relief context, and rejecting use of the categorical approach in such a context as well).

It is clear from the relevant statutory text that the government bears the burden of establishing removability. *See* 8 U.S.C. § 1229a(c)(3)(A). Once the government has met its burden, the noncitizen then bears the burden of establishing his eligibility for discretionary cancellation of removal. *See* 8 U.S.C. § 1229a(c)(4)(A)(i). To relieve either party of their burden would "effectively nullif[y] the statutorily prescribed burden of proof." *See Garcia*, 584 F.3d at 1290. The Second Circuit's holding does just that. For that reason, we reject the holding of the Second Circuit, and align our case law with that of the Fourth, Ninth, Seventh, and Tenth Circuits. We now hold that an inconclusive record of

discretionary relief.

conviction does not satisfy a noncitizen's burden of demonstrating eligibility for relief from removal.[12]

We now turn to the merits. Here, there is no question that Syblis is removable. Indeed, he conceded the point. The burden then shifted to Syblis to prove the absence of any impediment to discretionary relief. To do so, Syblis had to demonstrate, by a preponderance of the evidence, that the substance involved in his conviction did not involve a federally-defined controlled substance. A burden of proof by a preponderance of the evidence "requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993) (internal quotation marks and citation omitted). Accordingly, the burden establishes "which party loses if the

---

[12] Syblis argues that *Thomas v. Attorney General*, 625 F.3d 134 (3d Cir. 2010), counsels in favor of a different result. *See id.* at 147 (because the record was silent as to whether the noncitizen sold or exchanged marijuana, court could not definitively conclude that his conviction for criminal sale of marijuana constituted drug trafficking crime that qualified as aggravated felony). He asserts that *Thomas* stands for the proposition that when a record of conviction does not establish that a particular element of a crime was necessarily found by the convicting court, the alien meets his burden of proving that the provision precluding relief from removal does not apply. We reject this argument and *Thomas*'s application to the instant context. In *Thomas*, our inquiry required resort to the categorical approach, which we have expressly rejected here. That opinion also lacks any discussion of a noncitizen's burden of proving eligibility for discretionary relief.

evidence is closely balanced." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005). Here, Syblis has only demonstrated that the record is inconclusive – that his conviction for paraphernalia possession *may or may not* be related to a federally controlled substance. This demonstration shows only that "the evidence is closely balanced" and fails to show "that the existence of a fact is more probable than its nonexistence." We conclude that this is insufficient to meet his burden of proving eligibility for relief. Syblis is, therefore, not entitled to cancellation of removal.

## IV. Conclusion

For the reasons set forth above, we will deny Syblis's petition for review.