Mariano ANTUNA–ACOSTA, Petitioner

v.

ATTORNEY GENERAL UNITED STATES of America, Respondent.

No. 14–1362.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a)

Oct. 8, 2014.

Opinion Filed: Oct. 9, 2014.

---

Sigang Li, Esq., Philadelphia, PA, for Petitioner.

Thomas W. Hussey, Esq., W. Daniel Shieh, Esq., United States Department of Justice, Washington, DC, for Respondent.

Before: FUENTES, COWEN and VAN ANTWERPEN, Circuit Judges.

## OPINION

PER CURIAM.

Petitioner Mariano Antuna–Acosta petitions for review of a final order of removal issued by the Board of Immigration Appeals (BIA). For the reasons detailed below, we will dismiss the petition for review in part and deny it in part.

Antuna–Acosta is a citizen of Cuba. He entered the United States in 1995. In 2000, he was convicted of possession with the intent to distribute heroin in violation of N.J. Stat. Ann. § 2C:35–5(a)(1), (b)(3). As a result, in 2005, the Department of Homeland Security charged him with being removable as an alien who had been convicted of a controlled-substance violation, see 8 U.S.C. § 1182(a)(2)(A)(i)(II), and who the Attorney General had reason to believe "has been an illicit trafficker in any controlled substance," see § 1182(a)(2)(C).

Before an Immigration Judge (IJ), Antuna–Acosta conceded removability on both grounds, but sought relief under the Convention Against Torture (CAT). He testified that he graduated in the mid–1980s with "one of the best degrees, and therefore [he] had the best job." However, his employer invited him to join the Socialist Party, he refused, and he was then fired. After being fired, Antuna–Acosta destroyed political posters supporting Fidel Castro, and spoke out about the unfairness of the system. As a result, he was detained for 72 hours; warned that, if he continued to object to the political order, he would face criminal charges; and then released. Antuna–Acosta opened his own mechanic shop, and did not suffer any additional harm during the remaining seven or eight years that he resided in Cuba. He did state, however, that one of his uncles had been detained in Cuba at some point for "supporting the anti-revolutionary forces." His mother, meanwhile, had not had any problems with the government despite sharing his political ideology.

The IJ denied the CAT application, concluding that it was not "more likely than not that [Antuna–Acosta] would be subjected to torture in Cuba in the future because, frankly, [he] has not actually even testified that he believes he would be subjected to the kind of harm that rises to the level, or sinks to the level, of torture." Antuna–Acosta appealed to the BIA, and the BIA dismissed the appeal, ruling that Antuna–Acosta had failed altogether to sustain his burden of proof. Antuna–Acosta then filed a timely petition for review to this Court.

We generally have jurisdiction under 8 U.S.C. § 1252 to review final orders of removal. However, pursuant to 8 U.S.C. § 1252(a)(2)(C), "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [8 U.S.C. § ] 1182(a)(2)." Among other things, § 1182(a)(2) covers "any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21)." § 1182(a)(2)(A)(i)(II). Antuna–Acosta does not (and cannot) dispute that his conviction under New Jersey law for possessing with the intent to distribute heroin qualifies as a state law "relating to a con-

trolled substance (as defined in section 802 of Title 21)." *See Syblis v. Att'y Gen.*, 763 F.3d 348, 2014 WL 4056557, at *3–5 (3d Cir.2014, No. 11–4478) (providing standards governing this inquiry). Accordingly, § 1252(a)(2)(C)'s jurisdiction-stripping provision applies, and our jurisdiction is limited to reviewing constitutional claims and questions of law. *See* § 1252(a)(2)(D). We exercise de novo review over the BIA's legal conclusions. *Singh v. Att'y Gen.*, 677 F.3d 503, 508 (3d Cir.2012).

In his brief, Antuna–Acosta argues primarily that the BIA erred in concluding that he had failed to meet his burden of proving that government forces in Cuba would attempt to harm him if he returned. However, this prediction about what is likely to happen to Antuna–Acosta represents the type of factual finding that we lack jurisdiction to review. *See Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir.2010); *see also Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir.2007) (claim that the agency "incorrectly weighed evidence" is not a question of law). Therefore, to the extent that Antuna–Acosta challenges this aspect of the BIA's decision, we will dismiss his petition.

Antuna–Acosta also argues that his three-day confinement in the mid–1980s qualifies as torture. While this represents a legal question that we may review, *see Kaplun*, 602 F.3d at 271, the claim lacks merit. "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2). A three-day detention that involved no physical harm or other deprivation simply does not satisfy that demanding standard. *See, e.g., Kibinda v. Att'y Gen.*, 477 F.3d 113, 123 (3d Cir.2007) (denying CAT relief to individual who was detained for five days and suffered injury

that required five stitches); *Ahmed v. Keisler*, 504 F.3d 1183, 1200 (9th Cir.2007).

Accordingly, we will dismiss the petition for review in part and deny it in part.