PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2187
_____

AGUEDITA ORDONEZ-TEVALAN;
JULIO GONZALEZ ORDONEZ,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATE OF
AMERICA,

Respondent
_____

On Petition for Review of Decisions
and Orders of the Board of Immigration Appeals
(BIA-1 : A206-637-211)
(BIA-1 : A206-795-327)
Immigration Judge: Andrew R. Arthur
_____

Submitted under Third Circuit L.A.R. 34.1(a)
March 4, 2016

BEFORE:  JORDAN, GREENBERG, and SCIRICA,
Circuit Judges
(Filed: June 23, 2016)
_____

Carol A. Donohoe
P.O. Box 12912
Reading, PA 19612

   Attorney for Petitioners

Lindsay Corliss
United States Department of Justice
Office of Immigration Litigation
Room 2207
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Benjamin C. Mizer
Principal Deputy Assistant Attorney General
Civil Division
Brianne Whelan Cohen
Senior Litigation Counsel
Office of Immigration Litigation
Thomas W. Hussey
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Loretta Lynch
Attorney General
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

    <u>Attorneys for Respondent</u>

_____

OPINION

_____

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I. INTRODUCTION

This matter comes on before this Court on a petition for review of two decisions and orders of the Board of Immigration Appeals ("BIA"). Aguedita Odilia Ordonez-Tevalan ("Ordonez") petitions for review of the BIA's decision and order dismissing her appeal from a decision and order of an immigration judge ("IJ") denying her applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In addition, Julio Gonzalez Ordonez ("Gonzalez"), Ordonez's youngest son, petitions for review of the BIA's decision and order dismissing his appeal from the IJ's decision and order denying his derivative application for asylum, withholding of removal, and protection under the CAT.

While this petition was pending in this Court, petitioners

and the Attorney General filed a joint motion with the BIA to reopen the BIA proceedings. The BIA granted that motion and reissued its decisions and orders without change. The petitioners did not file a petition for review in this Court of the reissued decisions and orders. Thereafter the Attorney General filed a motion with this Court to dismiss the petition for review of the original decisions and orders for lack of jurisdiction. We hold that because the reissued decisions and orders did not alter the prior decisions and orders that petitioners challenge in their petition, we have jurisdiction over their petition. Therefore we will deny the Attorney General's motion to dismiss the petitions on jurisdictional grounds. We, however, will deny the petition for review on the merits.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ordonez is a native and citizen of Guatemala who has three sons. Ordonez first entered the United States on March 28, 2014, unaccompanied by her children and apparently without inspection, but on that day Border Patrol agents detained her. She claims that during this detention she expressed fear of returning to Guatemala because of abuse she had suffered there. Nevertheless, the Department of Homeland Security, after serving her with a Notice and Order of Expedited Removal, removed her on April 2, 2014. But on June 1, 2014, within less than two months of her removal, Ordonez reentered the United States with her youngest son, Gonzalez, who was then six years old, apparently again without inspection. This entry also was not successful, as the Border Patrol detained her and Gonzalez on June 1, 2014. In immigration court proceedings that

4

followed, the IJ in his decision stated that, as Ordonez "explained it, she returned with [her son] because she was told that it was more likely that she would be released if she were to show up with a child[.]" (AR 81). Ordonez, however, left her other two sons in Guatemala with her parents. Following Ordonez's second detention, the Department of Homeland Security initiated proceedings against her to restore the prior order of removal, and served Gonzalez with a notice to appear in immigration court to answer the charge that he was removable under 8 U.S.C § 1182(a)(6)(A)(i).

On September 25, 2014, while these removal proceedings were pending, Ordonez filed an application seeking asylum, withholding of removal, and protection under the CAT.[1] Gonzalez applied for similar relief as a derivative applicant on his mother's application.

In the immigration court, Ordonez resisted removal and sought protective relief based on her alleged fear of abusive conduct by her former boyfriend, Jose Lopez, with whom she had a relationship from approximately 1998 to 2000. Ordonez contended before the IJ that during that time frame, Lopez subjected her to verbal, physical, and sexual abuse. Ordonez testified in the immigration court that in April 2000, she ended her relationship with Lopez and thereafter she had no contact or communication with him until January 2014, when, apparently

---

[1] According to the Attorney General's brief, Ordonez did not actually seek asylum but she sought withholding of removal and CAT relief on a form that is also used when an alien is seeking asylum. (Respondent's br. at 6 n.4). Nevertheless, inasmuch as the IJ and the BIA considered asylum, we address an asylum claim in this opinion.

by chance, she encountered him. Ordonez asserts that during this encounter, Lopez grabbed her on the street, kicked her, threw her to the ground, and attempted to rape her, but she managed to escape. Ordonez claims that later in the same month, Lopez found her at her home and raped her. She alleges that he threatened to kill her and any of her children who were with her if he saw her again. As a result of these alleged actions and threats, Ordonez asserts that she stopped leaving her house alone and fled to this country to escape Lopez.

Following oral testimony and the filing of affidavits, an IJ on December 3, 2014, denied Ordonez's claims for relief. In his oral decision, the IJ first noted that Ordonez was placed only in withholding of removal proceedings in accordance with 8 C.F.R. § 208.31(e) because she was ineligible for asylum due to the reinstatement of the prior order for her removal. See 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 208.16. In addressing the merits of the case, the IJ concluded that Ordonez was not credible given her vague recollections of dates, inconsistencies between her testimony and documentary evidence, and his belief that her testimony regarding the Border Patrol's conduct during her first attempt to enter this country was "inconsistent with what the Court knows to be the practice of the Border Patrol." (AR 91). Accordingly, he rejected her application. The IJ further determined that even if her testimony had been credible, she still failed to establish a basis for withholding of her removal. Finally, the IJ denied Ordonez relief on her CAT claim because he determined that there was no basis to find that any harm she had suffered in Guatemala or would suffer if she returned to that country had been or would be inflicted or instigated by or with the consent, acquiescence, or willful blindness of any public official or person acting in an official capacity.

6

The IJ also determined that Gonzalez's claims failed because of Ordonez's lack of credibility. The IJ found support for this outcome by observing that Gonzalez's two older brothers continued to live in Guatemala without incident, a circumstance from which an inference could be drawn that he could safely return to that country. Petitioners appealed to the BIA from the IJ's decisions and orders.

On May 4, 2015, the BIA dismissed petitioners' appeals. In reaching its result, the BIA discerned "no clear error" in the IJ's "consideration of the totality of the circumstances," (AR 5), and concluded that the IJ "provided specific, cogent reasons for finding [Ordonez] not credible under section 208(b)(1)(B)(iii) of the Immigration and Nationality Act ('INA')," (AR 5). Moreover, the BIA concluded that Ordonez had "not presented independent evidence showing that a probability as opposed to a possibility of torture is more likely than not, by or with the consent or acquiescence (to include the concept of willful blindness) of an official of the Guatemalan government" if she returned to Guatemala. (AR 5). As a result, the BIA dismissed Ordonez's appeal in its entirety.

In a separate decision and order, also issued on May 4, 2015, the BIA dismissed Gonzalez's appeal from the decision and order that the IJ had rendered with respect to him. The BIA first referenced its affirmance of the IJ's denial of Ordonez's claims for asylum and withholding of removal due to her lack of credibility. The BIA then noted that Gonzalez's asylum application was derivative to Ordonez's and thus he did not have an independent claim for relief. Accordingly, the BIA concluded that, in light of his mother's ineligibility for relief, his claims, too, must fail. Alternatively, the BIA noted that any threatened harm to Gonzalez, even if credible, would not be on

7

account of any protected ground.  Further, the BIA highlighted the fact that the record did not reflect that Gonzalez suffered any harm before leaving Guatemala or that his two older brothers who remained in Guatemala suffered any harm either before or after their mother left Guatemala to come to this country. Finally, the BIA rejected Gonzalez's CAT claim because the adverse credibility finding with respect to Ordonez entirely foreclosed his claims.

On May 13, 2015, petitioners filed a timely petition for review and a motion for a stay of removal in this Court.  On June 1, 2015, the Attorney General and petitioners filed a joint motion with the BIA to reopen the BIA proceedings because neither party had received the decision and order from the BIA that dismissed Gonzalez's appeal.  On the same day, the Attorney General filed a motion to hold the proceedings on the petition for review in abeyance in light of the joint motion before the BIA to reopen the proceedings before the BIA.  The Attorney General argued that "[i]f the Board reopens proceedings, this Court will no longer have jurisdiction over the Board decision that is currently the subject of the petition for review filed in this case."  (See Respondent's Motion to Hold Proceedings in Abeyance, at 1 (June 1, 2015)).  Petitioners did not object to this request.

On July 14, 2015, the BIA entered an order in which it granted the joint motion to reopen the BIA proceedings. Specifically, the BIA stated that "[t]he record reflects that a separate decision was prepared on behalf of [Gonzalez], but may not have been received by the parties."  Respondent's Response to Court Order and Motion to Dismiss, Ex. 3, at 3 (3d Cir. Aug. 3, 2015).  Consequently, the BIA ordered that its prior decisions of May 4, 2015, with respect to both petitioners, be reissued and

8

further determined that they "shall be treated as entered as of today's date"—namely, July 14, 2015. Id.

Petitioners filed an uncontested motion for a stay of removal and on August 3, 2015, we granted that motion and denied the Attorney General's motion to hold the proceedings in abeyance as moot in light of the BIA's July 14, 2015 reissuance of its May 4, 2015 decisions and orders. We also asked the parties to comment on the purpose of the motion to reopen and the effect, if any, of the BIA's reissuance of its earlier decisions and orders on this Court's jurisdiction.

The Attorney General on August 3, 2015, filed a motion to dismiss the petition for review for lack of jurisdiction. In that submission, the Attorney General clarified that the purpose of the joint motion before the BIA was to allow the BIA to address Gonzalez's claims, as the parties may not have recognized that it already had done so. The Attorney General argued that, as a result of the BIA's reissuance of its earlier decisions and orders, we lacked jurisdiction to entertain the petition for review because the May 4, 2015 decisions and orders were no longer final. The Attorney General also asserted that petitioners would have 30 days from the date of the reissuance of the decisions and orders, i.e., until August 13, 2015, to file a petition for review of the reissued decisions and orders. But petitioners did not file a new petition for review within that time period or at any point thereafter. Accordingly, we directed the parties to file supplemental letter memoranda to address the question of whether we have jurisdiction.

Petitioners contended in response to our direction to comment on the question of the motion to reopen that the BIA reissued its May 4, 2015 decisions and orders on July 14, 2015,

9

solely to cure an unintentionally incomplete record, and the reissuance of the May 4, 2015 decisions and orders, without change, did not render the initial petition for appellate review moot. They asserted that, to the contrary, the reopening ripened the case so that the decisions and orders could be reissued and we could address their pending petition for review on the merits. The Attorney General, however, argued that the BIA's original decisions and orders were no longer final, as they had been vacated and replaced by the new decisions and orders and therefore we do not have jurisdiction over the petition for review of the original decisions and orders. The Attorney General also pointed out that "[p]etitioners had ample opportunity to file new petitions for review after the newly issued decisions[,]" particularly inasmuch as the Attorney General's motion to dismiss, filed on August 3, 2015, "specifically alerted the parties to the necessity of filing new petitions for review" on or before August 13, 2015. (See Respondent's Letter Memorandum in Response to the Court's Feb. 2, 2016 Order, at 3 (Feb. 9, 2016)).

## III. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction over this action pursuant to 8 C.F.R. §§ 1003.1(b)(2) and 1240.15. We discuss our jurisdiction under 8 U.S.C. § 1252(a), INA § 242(a), at length below and ultimately conclude that we have jurisdiction.[2] On the merits, we "decide the petition only on the administrative

---

[2] Venue is properly in this Court because the IJ completed the proceedings in York, Pennsylvania.

record on which the order[s] of removal [were] based," 8 U.S.C. § 1252(b)(4)(A), and "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

## IV. DISCUSSION

### A. Jurisdiction

An order of removal may be reviewed only when "[t]he petition for review [is] filed not later than 30 days after the date of the <u>final</u> order of removal." 8 U.S.C. § 1252(b)(1) (emphasis added). Though the petition for review was timely, we are left with the jurisdictional issue of whether the BIA's grant of a motion to reopen proceedings, which resulted in the reissuance of previous decisions and orders without change, divested us of jurisdiction to hear the merits of the petition for review from the original decisions and orders. We conclude that it does not.

In <u>Stone v. INS</u>, 514 U.S. 386, 115 S.Ct. 1537 (1995), the Supreme Court interpreted the consolidation provision of 8 U.S.C. § 1252,[3] which currently reads as follows: "When a

---

[3] When the Supreme Court decided <u>Stone</u>, the consolidation provision was codified at 8 U.S.C. § 1105a(a)(6) and contained wording that is slightly different from its current form. But the wording of the prior and current consolidation provisions is not different in substance. <u>See</u> <u>Stone</u>, 514 U.S. at 393-94, 115 S.Ct. at 1543 (setting forth the then-controlling provision); <u>Thomas v. Att'y Gen.</u>, 625 F.3d 134, 139 n.3 (3d Cir. 2010) (discussing

11

petitioner seeks review of an order under this section, any review sought of a motion to reopen or reconsider the order shall be consolidated with the review of the order." 8 U.S.C. § 1252(b)(6). The issue before the Court in Stone was whether the Court of Appeals for the Sixth Circuit correctly concluded that it lacked jurisdiction to hear a petition for review of a deportation order then pending before it, the specific question being "whether the filing of a timely motion for reconsideration of a decision by the Board of Immigration Appeals tolls the [time] period for seeking judicial review of the decision." Stone, 514 U.S. at 388, 115 S.Ct. at 1541.

Stone dealt with an adverse deportation decision and order that the BIA made with respect to the petitioner, Marvin Stone, on July 26, 1991. Id. at 389, 115 S.Ct. at 1541. Without then filing a petition for review, Stone filed a timely "motion to reopen and/or reconsider" the July 26, 1991 decision and order with the BIA in August 1991. Id. On February 3, 1992—"some 17 months later"—the BIA denied the motion as frivolous. Id. Thereafter, Stone petitioned the court of appeals for review of both the July 26, 1991 deportation order and the February 3, 1992 denial of his motion to reopen or reconsider. Id. On a simple counting of days, the petition was timely as to the February 1992 order, but untimely as to the July 1991 deportation order. See id. The court of appeals held that it did not have jurisdiction to review the July 26, 1991 deportation order, though it could review the February 3, 1992 order denying the motion to reopen. The issue in the Supreme Court, then, was whether the filing of the motion to reopen and/or for reconsideration tolled the time within which Stone could file a

Stone and providing an annotated comparison of current § 1252(b)(6) with the previous § 1105a(a)(6)).

12

petition for review of the July 26, 1991 deportation order, or, alternatively, whether Stone's petition for review was out of time with respect to that order so that the court of appeals correctly dismissed it. See id.

Turning to the consolidation provision, the Court concluded that "[b]y its terms, [it] contemplates two petitions for review and directs the courts to consolidate the matters." Id. at 394, 115 S.Ct. at 1543. The Court elaborated:

> The words of the statute do not permit us to say that the filing of a petition for reconsideration or reopening dislodges the earlier proceeding reviewing the underlying order. The statute, in fact, directs that the motion to reopen or reconsider is to be consolidated with the review of the order, not the other way around. This indicates to us that the action to review the underlying order remains active and pending before the court. We conclude that the statute is best understood as reflecting an intent on the part of Congress that deportation orders are to be reviewed in a timely fashion after issuance, irrespective of the later filing of a motion to reopen or reconsider.

Id. at 394, 115 S.Ct. at 1543-44.

Stone established that the initial BIA decision is "final when issued, irrespective of the later filing of a reconsideration motion, and the aggrieved party would seek judicial review of the order within the specified period. Upon denial of reconsideration, the petitioner would file a separate petition to review that second final order." Id. at 395, 115 S.Ct. at 1544; accord id. at 405, 115 S.Ct. at 1549 ("The consolidation provision . . . reflects Congress' understanding that a deportation order is final, and reviewable, when issued. Its finality is not affected by the subsequent filing of a motion to reconsider."). Stone dealt with a scenario in which the petitioner did not file his petition from the initial BIA order but rather filed his petition after the BIA denied his motion for reopening or reconsideration. Consequently, the court of appeals correctly did not review the deportation order.

Though Thomas v. Attorney General, 625 F.3d 134 (3d Cir. 2010), differed factually from Stone, we followed Stone in that case. In Thomas, we dealt with a scenario in which an applicant filed a petition for review from an initial BIA decision and order simultaneously with the filing of a motion with the BIA to reconsider its prior decision and order.[4] The jurisdictional question in that case arose because the applicant did not file a second petition for review after the BIA granted the motion to reconsider and issued a new decision altering its

---

[4] In a comparable situation, a district court would not have jurisdiction to entertain a motion for reconsideration once an appeal had been taken unless the court of appeals remanded the case to that court. See Venen v. Sweet, 758 F.2d 117, 120 (3d Cir. 1983). But there is no doubt that the BIA could reconsider its decisions and orders in this case without a remand from the Court. See 8 C.F.R. § 1003.2.

recitation of several pertinent facts, but adhering "to the legal analysis set forth in its initial decision." Id. at 136. We concluded in Thomas that, in light of Stone, we retained jurisdiction over the initial petition for review.

While Thomas began its analysis with reliance on Stone for the proposition that the initial BIA order was "final" for purposes of 8 U.S.C. § 1252, it proceeded to note that "[t]he finality of an order . . . is not the only requirement that must exist before we may exercise jurisdiction." Thomas, 625 F.3d at 139 (citing Jaggernauth v. Att'y Gen., 432 F.3d 1346, 1351 (11th Cir. 2005)). We explained that we must also look to the constitutional "case-or-controversy requirement," which "'limits the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process[.]'" Id. (alteration in original) (some internal quotation marks omitted) (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208 (1980)). "When the questions or issues presented are no longer 'live,' the case is moot. That is, an issue is moot if changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." Id. at 139-40 (citations and internal quotation marks omitted).

Applying these justiciability principles to the facts then at hand, we acknowledged in Thomas that the BIA's subsequent grant of the motion for reconsideration constituted a change in circumstances. Id. at 140. Nevertheless, we clarified that "[t]he BIA's mere grant of a motion for reconsideration . . . does not in itself render the petition for review moot." Id. "Rather, it is the substance of the BIA's subsequent decision, upon reconsideration, that determines whether there is still a live issue for the court of appeals to resolve." Id. We provided the

15

following criterion to determine appealability when there are successive BIA decisions and orders:

> [I]f the BIA's subsequent decision substantively altered the ratio decidendi in its earlier disposition and operated to vacate the BIA's earlier decision, then the petition for review of the earlier decision is without effect because there is no longer any order or decision for the court of appeals to review. On the other hand, if the BIA's subsequent decision did not materially alter the rationale of the earlier ruling, that ruling remains effective and subject to judicial review by the court of appeals.

Id.

Based on this analysis, we held in Thomas that we retained jurisdiction over the initial petition for review, because the BIA's decision following its grant of the motion for reconsideration "adhered to its earlier legal analysis" and differed only in its correction of specific factual errors. Id. at 141. Our decision in Thomas was, and remains, consistent with the reasoning of the majority of courts of appeals to address this jurisdictional question. See, e.g., Espinal v. Holder, 636 F.3d 703, 705-06 (5th Cir. 2011); Plasencia-Ayala v. Mukasey, 516 F.3d 738, 745 (9th Cir. 2008), overruled on other grounds by Marmolejo-Campos v. Holder, 558 F.3d 903, 911 (9th Cir. 2009) (en banc); Jaggernauth, 432 F.3d at 1350-52; Khouzam v.

16

Ashcroft, 361 F.3d 161, 167 (2d Cir. 2004).  But see Bronisz v. Ashcroft, 378 F.3d 632, 637 (7th Cir. 2004) ("[T]he grant of a motion to reopen vacates the previous order of deportation or removal and reinstates the previously terminated immigration proceedings.").

While Thomas involved a motion for reconsideration and thus in itself does not resolve the issue before us, we hold that its framework applies equally to a motion to reopen, particularly where, as here, the parties sought the reopening simply so that the BIA could reissue earlier decisions and orders.  Inasmuch as the BIA's reissuance of its initial decisions and orders in this case did not change its initial decisions and orders from which petitioners already had sought review, we retain jurisdiction to address the petitioners' petition for review.  Consequently, the Attorney General's motion to dismiss will be denied, and we will proceed to the merits of the petition for review.

B.  Merits

We recognize that removal cases frequently raise sensitive issues as it is no small thing to require an alien who may face adverse or even desperate circumstances in her home country to return there.  Nevertheless, there are statutes and regulations governing removal cases and our consideration of these binding standards and the record in this case makes clear that the petition for review in this case is not meritorious.  In reaching this conclusion we limit our review of the merits to the administrative record on which the orders of removal were based.  8 U.S.C. § 1252(b)(4)(A).  Inasmuch as the BIA adopted and affirmed the IJ's decisions and orders as well as making an independent analysis, we review both the IJ's and the BIA's decisions and orders.  See Voci v. Gonzales, 409 F.3d 607, 612-

17

13 (3d Cir. 2005).

The BIA's factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude otherwise." 8 U.S.C. § 1252(b)(4)(B). This deferential standard applies equally to credibility determinations. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004) ("[W]e are required to sustain an adverse credibility determination unless . . . no reasonable person would have found the applicant incredible." (citation and internal quotation marks omitted) (alteration in original)). Critically, "[w]e look at an adverse credibility determination to ensure that it was based on inconsistent statements, contradictory evidence, and inherently improbable testimony." Toure v. Att'y Gen., 443 F.3d 310, 325 (3d Cir. 2006) (citation omitted).

It is often the case that a petitioner will seek relief through the grant of asylum, withholding of removal, and relief under the CAT. A petitioner has the burden to demonstrate her eligibility for asylum, 8 C.F.R. § 1208.13(a), and, to satisfy that burden, she must prove that she is a refugee. See 8 U.S.C. § 1158(b). A "refugee" is a person outside her country of nationality who is "unable or unwilling" to return to that country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Ordonez's claim for asylum, however, cannot possibly be successful because she is not eligible for asylum as she entered the country illegally after being removed. 8 U.S.C. § 1231(a)(5).

Nevertheless Ordonez may seek and, if justified, obtain an order for withholding of removal as she is not categorically

precluded from obtaining that relief. To demonstrate her qualification for withholding of removal, "an alien must show that if returned to [her] country, it is more likely than not that [her] life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." Amanfi v. Ashcroft, 328 F.3d 719, 726 (3d Cir. 2003) (citations omitted). "To meet this standard, [an alien] must show with objective evidence that it is 'more likely than not' [that she] will face persecution if [she] is deported" to her home country. Chang v. INS, 119 F.3d 1055, 1066 (3d Cir. 1997) (citation omitted). "'[P]ersecution' is an extreme concept that does not include every sort of treatment our society regards as offensive." Fatin v. INS, 12 F.3d 1233, 1243 (3d Cir. 1993).

Finally, to receive protection under the CAT, an alien must prove that "it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Torture is "an extreme form of cruel and inhuman treatment," id. § 1208.18(a)(2), "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," id. § 1208.18(a)(1). Using the deferential standards that we set forth above, we turn to petitioners' claims for relief from removal.

We note at the outset of our merits analysis that there is substantial evidence to support the adverse credibility determination with respect to Ordonez's testimony because the administrative record demonstrates "inconsistent statements, contradictory evidence, and inherently improbable testimony," all of which support the IJ's and the BIA's conclusions on the credibility issue. Toure, 443 F.3d at 325. First, Ordonez submitted affidavits from two individuals she contends had knowledge of the abuse she endured in Guatemala at the hands

19

of Lopez. Jorge Tevalan Puac ("Puac"), who is identified as the First Auxiliary Mayor of the Village Aldea Felicidad, was one such affiant. His affidavit states that he reviewed the records of the auxiliatura, which reflect that Ordonez complained to the local authorities in the village on June 6, 2014, to state that she was the victim of domestic violence. When asked about this affidavit, Ordonez identified Puac as a neighbor, not a government official. Moreover, Ordonez was asked why the Puac affidavit stated that she complained about the domestic violence on June 6, 2014, when, in fact, she was in the custody of immigration officials in this country on that date. She had no explanation for this discrepancy.

The second affiant was Estaban Vail ("Vail"), who is identified as the Community Mayor of the Village of Nueva Cajola. In his affidavit, Vail states that Ordonez was a victim of domestic violence during her married life. When asked about this affidavit, Ordonez stated that Vail was another neighbor who worked as a farmer. Ordonez was asked about the specific reference to "married life" and conceded that no one in the village knew about her prior relationship with Lopez. Rather, they were aware of her marriage to the father of her children, Magdaleno Gonzalez de Belan, and she does not claim that he abused her. As was the case with respect to the Puac affidavit, Ordonez could not explain the discrepancy in this affidavit. As a result of these affidavits, both of which appear to have been submitted from two local mayors in Guatemala, Ordonez was asked whether she knows anyone who works in government. She replied that she did not, even when questioned directly about the titles provided on the Puac and Vail affidavits. It was only after direct, repeated questioning that Ordonez acknowledged that Puac and Vail held local governmental

positions. These inconsistencies between Ordonez's testimony and the documentary evidence she submitted provide sufficient evidence to support the IJ's credibility determination.

This adverse credibility finding in itself requires that we deny Ordonez's petition for review. But there is a further reason why we must reach that result, in that she has not demonstrated that any alleged abuse that she had suffered or feared resulted or would result from her membership in a particularized protected social group. See Amanfi, 328 F.3d at 726. The IJ noted that in Matter of A-R-C-G, 26 I. & N. Dec. 388 (BIA 2014), the BIA "held that depending on the facts and evidence in an individual case[,] . . . married women in Guatemala who are unable to leave a relationship can constitute a cognizable social group[.]" (AR 92). But Ordonez is not a member of this group, as she acknowledges that she never was married to Lopez.

Finally, Ordonez is not entitled to protection under the CAT because there is no evidence in the record that she was subjected to abuse "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). To the contrary, both Ordonez's testimony and the affidavits submitted on her behalf indicate that the local government and other members of her community did not condone any abuse and, in fact, offered her assistance. Based on the record before us, we are constrained to accept the adverse credibility determination and conclude that the IJ and the BIA properly denied Ordonez's requests for withholding of removal and protection under the CAT. Thus, as Ordonez also is barred from obtaining asylum she cannot obtain relief in these proceedings.

The IJ and the BIA likewise correctly denied Gonzalez's

21

claims. His alleged entitlement to relief is entirely reliant on his mother's claimed fear of persecution. Because the adverse credibility determination with respect to her makes her claims unsustainable, so, too, does it prevent Gonzalez from establishing his claims. Moreover, even if Ordonez had been credible, Gonzalez, like his mother, has failed to identify his membership in a cognizable social group, a requirement for both his asylum claim and his request for withholding of removal.[5] See Amanfi, 328 F.3d at 726. Ordonez's testimony makes clear that the only threat that Lopez allegedly made to her children was to harm them if they were with her when he harmed her. Thus, the evidence does not support the claim that Gonzalez cannot return to Guatemala "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Consequently, the IJ correctly denied his application for asylum and withholding of removal, and the BIA correctly dismissed his appeal from that disposition.

Finally, Gonzalez's claim for protection under the CAT also fails because there is no evidence that it is "more likely than not" that he would be "tortured" if returned to Guatemala. Rather, the record demonstrates that the local government

---

[5] The BIA indicated that inasmuch as Gonzalez "is a derivative asylum applicant, he does not have a claim for asylum independent from his mother's claim." (AR 463). We are not suggesting that a minor child pursuing a derivative application based on his parent's application must himself be a member of a protected cognizable social group if his parent is a member of a protected cognizable social group, but that is not the situation in this case.

officials do not condone domestic violence and that his older brothers remain in Guatemala unharmed. Accordingly, the IJ and the BIA properly determined that he is not entitled to protection under the CAT.

## V. CONCLUSION

For the foregoing reasons, we will deny the Attorney General's motion to dismiss the petition for review for lack of jurisdiction and will deny the petition for review filed on behalf of petitioners on the merits. Any order outstanding for stay of removal of either petitioner will be vacated.