**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-2916

_____

CHRISTINA DE LOS ANGELOS LOPEZ-VILLEDA; A. A. V.-L.; A. A. V.-L.,

Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review from a Final Order
of the Board of Immigration Appeals
(A201-938-977/978/979)
Immigration Judge: Jason L. Pope

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 15, 2025

Before: RESTREPO, McKEE, and RENDELL, *Circuit Judges*

(Opinion filed:  March 20, 2026)

_____

OPINION[*]

_____

_____

[*]  This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not
binding precedent.

RESTREPO, *Circuit Judge*.

Christina De Los Angeles Lopez-Villeda, a native and citizen of Honduras, and her two daughters petition for review of a final order of the Board of Immigration Appeals (BIA) denying their application for asylum, withholding of removal, and relief under Convention Against Torture (CAT). For the following reasons, we will deny the petition.

I.

Lopez-Villeda and her two daughters entered the United States in June 2021 without inspection. On August 12, 2021, the Department of Homeland Security (DHS) charged petitioners with being present in the United States without being admitted or paroled in violation of 8 U.S.C. § 1182(a)(6)(A)(i).[1] Petitioners conceded their removability but filed applications for asylum under 8 U.S.C. § 1158(a)(1) and withholding of removal under 8 U.S.C. § 1231(b)(3) and sought protection under the Convention Against Torture (CAT). Following a merits hearing, an Immigration Judge (IJ) denied their applications for relief. Lopez-Villeda appealed to the BIA, which affirmed the IJ's order. This petition for review of the BIA's order followed.

---

[1] Lopez-Villeda, the mother, is the lead petitioner. Her daughters' petitions are derivative of their mother's petition for relief. Unless otherwise indicated, reference to Lopez-Villeda refers to the collective petitions for relief.

II.

After floods destroyed her home in November 2020, Lopez-Villeda and her daughters moved to her parents' home in the Sandoval Sorto neighborhood of San Pedro Sula, Honduras. To make money to support the family, Lopez-Villeda opened a small stand in her family's yard that sold used clothing.

Criminal gangs, active in the Sandoval Sorto neighborhood, would extort money from small businesses in the area. Beginning in May 2021, Lopez-Villeda noticed men she believed to be gang members walking by her family's house at night. One evening in mid-May, two men with Mara 13 gang tattoos approached Lopez-Villeda's stand and demanded that she pay them a weekly sum. When Lopez-Villeda explained that she could not afford to meet their demands and still feed her daughters, the men stated that they would kill her and her daughters if she did not pay. The gang members threatened Lopez-Villeda twice before she left the country. They did not physically harm her, and she did not report their threats to the police. She alleged the men threatened retribution if she told the police and she did not believe the Honduran government could effectively respond to the gang's threats.

In seeking asylum and withholding of removal, Lopez-Villeda claimed past persecution and a reasonable fear or likelihood of future persecution due to her membership in several particular social groups (PSGs): Honduran women; Honduran single mothers; Honduran single mothers of daughters; and Honduran small business

3

owners.  In seeking CAT protection, Lopez-Villeda claimed that she would likely be tortured with government acquiescence if returned to Honduras.

Regarding the asylum and withholding of removal claims, the IJ found Lopez-Villeda's testimony credible and that the threats against her constituted past persecution. He, however, denied relief because he found none of Lopez-Villeda's proposed PSGs cognizable.  He further found Lopez-Villeda failed to establish a nexus between a protected ground and any past or future persecution.  Instead, the gang's threats were "to garner economic gain," not to persecute Lopez-Villeda because of her membership to a particular social group.  A.R. 61.

In deciding the CAT claim, the IJ concluded that Lopez-Villeda was not a victim of past torture and that the threats, if they resumed upon her return, did not rise to the level of torture.  The IJ further found that, while "parts of the evidence" raised concerns about the government's ability to address violent crime, "efforts are being made . . . to combat" gang violence and the Honduran government would not acquiesce to Lopez-Villeda or her daughters being tortured.  A.R. 69**.**

The BIA affirmed the IJ's findings and decisions.  It ruled the IJ did not err in deciding that the threats against Lopez-Villeda were economically motivated, agreeing that the evidence failed to show that the threats were related to a protected ground.  It also affirmed the IJ's denial of CAT protection, holding that Lopez-Villeda did not establish that she would more likely than not face torture with the consent or acquiescence of the government if she was returned to Honduras.  We agree.

III.

We have jurisdiction over this petition for review of a final order of removal under 8 U.S.C. § 1252(a). "When, as here, the 'BIA's opinion directly states that the BIA is deferring to the IJ, or invokes specific aspects of the IJ's analysis and factfinding in support of the BIA's conclusions,' we review both decisions." *Uddin v. Att'y Gen.*, 870 F.3d 282, 289 (3d Cir. 2017) (quoting *Olivia-Ramos v. Att'y Gen.*, 694 F.3d 259, 270 (3d Cir. 2012)).

This Court reviews challenges to the agency's factual findings under the substantial evidence standard. *Thayalan v. Att'y Gen.*, 997 F.3d 132, 137 (3d Cir. 2021). Under this highly deferential review, the agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "If a reasonable fact finder could make a particular finding on the administrative record, then the finding is supported by substantial evidence." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (en banc).

A. Denial of Asylum and Withholding of Removal

To be eligible for asylum, a non-citizen must demonstrate that they face "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" if removed to their home country. 8 U.S.C. § 1101(a)(42)(A). Where, as here, the IJ found a showing of past persecution, the non-citizen is entitled "to a rebuttable presumption of a well-

5

founded fear of future persecution." *Toure v. Att'y Gen.*, 443 F.3d 310, 317 (3d Cir. 2006) (citing 8 C.F.R. § 208.13(b)(1)).

Eligibility for withholding of removal requires an applicant to demonstrate a higher burden: that they would "more likely than not" face persecution based on a protected ground. *INS v. Cardoza-Fonesca*, 480 U.S. 421, 430 (1987). Because withholding of removal requires proof of a higher likelihood of future persecution, "an applicant who cannot meet the standard for asylum will necessarily be unable to meet the standard for withholding of removal." *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 348–49 (3d Cir. 2008) (citing *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003)).

Both avenues of relief require that the persecution, or well-founded fear thereof, be on account of a protected ground, which means "that ground is at least 'one central reason' why the applicant was or will be targeted." *Thayalan*, 997 F.3d at 138 (quoting *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684–85 & n.6 (3d Cir. 2015)). If the applicant fails to provide any evidence, direct or circumstantial, that the persecutors would be motivated by one of the grounds listed in 8 U.S.C. § 1142(a)(42)(A), then she fails to establish the requisite nexus between the fear of future persecution and a protected ground. *See e.g.*, *Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 180–81 (3d Cir. 2020) (affirming the BIA's ruling that petitioner failed to establish that he was persecuted because of protected ground, his imputed political opinion).

Finally, whether such a nexus exists is a finding of fact that we review under the substantial evidence standard of review. *Thayalan*, 997 F.3d at 138 (citing *INS v. Elias-*

*Zacarias*, 502 U.S. 478, 481 & n.1, 483–84 (1992)). We will not, however, award such deference to a finding of fact premised "on a misunderstanding of the law." *Id.* (quoting *Doe v. Att'y Gen.*, 956 F.3d 135, 141 (3d Cir. 2020)). Thus, if we conclude the agency properly found Lopez-Villeda failed to prove she reasonably fears future persecution "*because of*" her membership to a protected group, that finding stands unless she presents evidence "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias-Zacarias*, 502 U.S. at 483–84.

Despite being entitled to the presumption of a reasonable fear of future persecution, Lopez-Villeda does not establish that the record compels the conclusion that the extortion was motivated by her status as a single mother or a single mother of daughters.[2] The agency found that the gang members' threats were just financially motivated. Lopez-Villeda does not cite any evidence of record that refutes this finding, much less compels us to deem the nexus requirement satisfied. She points to no part of the record that supports the inference that the gang members threatened her because she was a woman or a single mother of daughters or because they had animus against small

---

[2] The IJ found that Lopez-Villeda's proposed particular social groups, Honduran women, Honduran single mothers, Honduran single mothers of daughters, and Honduran small business owners, lacked sufficient particularity and were therefore not cognizable under the Immigration and Nationality Act. A.R. 59-62. However, the BIA did not consider this finding on appeal but instead assessed the IJ's determination that Lopez-Villeda did not establish her past persecution nor fear of future persecution was on account of a protected ground. Because we cannot uphold a decision on grounds not considered by the BIA, we will not address the IJ's rejection of the petitioner's proposed social groups. *See Orabi v. Att'y Gen.*, 738 F.3d 535, 539 (3d Cir. 2014) (stating that this Court cannot uphold an agency decision on a ground upon which the agency did not rely); *Li v. Att'y Gen.,* 400 F.3d 157, 163 (3d Cir. 2005) (same).

business owners. Instead, she testified that the gangs extorted small business owners regardless of whether they were owned by men, women, couples or single mothers.

While the gang members threated to harm her children if Lopez-Villeda did not pay them, the record does not compel a finding that the extortion was motivated by her single mother or single mother of daughters' status. A reasonable factfinder could find that the gang members threatened her children in order to extract money from her business. *Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 130 (3d Cir. 2009) (holding that protected ground must play more than "an incidental, tangential, or superficial role in persecution" to qualify non-citizen for asylum). We recognize that Lopez-Villeda is not required to provide "direct proof" of the gang members' motives, but she is required to provide "*some* evidence"—either direct or circumstantial—that the gang threatened her for reasons other than just financial enrichment. *Elias-Zacarias*, 502 U.S. at 483–84. Because Lopez-Villeda has not done so, we will uphold the agency's denial of relief.

B. Denial of CAT Protection

We next review the agency's determination that Lopez-Villeda has not met her burden of proof for CAT protection. To do so, Lopez-Villeda had to establish that she would be more likely than not tortured if removed to Honduras. In assessing the CAT claim, the agency must ask: (1) "what is likely to happen to the petitioner if removed" and whether "what is likely to happen amount[s] to the legal definition of torture"; and (2) "how public officials will likely act in response to the harm the petitioner fears" and

8

whether that response "qualifies as acquiescence under the governing regulations." *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017) (citation modified).[3]

As to the first prong, the IJ found, and the BIA affirmed, that the threats Lopez-Villeda endured did not rise to the level of torture and she failed to demonstrate she would likely face torture if removed to Honduras. In finding the threats did not constitute torture, the IJ cited the fact that the gang members did not physically harm Lopez-Villeda or her daughters. In assessing the likelihood of torture if removed, the IJ found it significant that Lopez-Villeda's mother and siblings remain where she lived in Honduras and have not been harmed. The IJ observed that her family not being targeted or threatened in her absence "undercuts" her claim for protection under CAT. A.R. 67 (citing *Ordonez-Tevalan v. Att'y Gen.*, 837 F.3d 331 (3d Cir. 2016)).

We will affirm because a reasonable factfinder would not be compelled to find that she had been tortured or likely faces torture if removed to Honduras. Torture is defined as "an extreme form of cruel and inhuman treatment" that "does not include lesser forms of cruel, inhuman or degrading treatment or punishment." 8 C.F.R. § 1208.18(a)(2). The gang members' threats, although reprehensible, were unfulfilled and did not result in extreme injury to Lopez-Villeda or her daughters. She did not establish that she would be "tortured," as defined under the CAT, if she returned to Honduras and experienced more

---

[3] While the first part of each prong is factual and reviewed under the substantial evidence standard, the second part of each prong is legal and reviewed de novo. *Myrie*, 855 F.3d at 516–17.

extortion attempts.  Rather than demonstrate the gang members intended to inflict severe pain or suffering, the record established their intention was to get her money.  *See Pierre v. Att'y Gen.*, 528 F.3d 180, 190 (3d Cir. 2008) (en banc) (noting that a petitioner cannot obtain CAT relief unless they show that the "prospective torturer will have the goal or purpose of inflicting severe pain or suffering").

Because Lopez-Villeda has not met her burden of establishing that she likely faces torture if removed, we need not address the acquiescence prong.  But, in any event, Lopez-Villeda did not establish that the Honduran government chose, or would choose, not to help her if she or her daughters experienced torture.  The lack of evidence connecting the Honduran government to the gang members' threats supports the agency's finding that the threats were not inflicted by, at the instigation of, or with the consent or acquiescence of a public official acting in an official capacity.  8 C.F.R. § 1208.18(a)(1).  The agency did not err in rejecting Lopez-Villeda's claim for CAT protection.

IV.

For the foregoing reasons, we will deny Lopez-Villeda's petition for review.  Lopez-Villeda's motion for a stay of removal is hereby denied.[4]

---

[4] Petitioners filed a motion for stay of removal which the Clerk's Office temporarily granted on July 9, 2025.  Removal was stayed until this Court could consider the motion.  We do so now.

10